Richard D. McCune, State Bar No. 132124
E-mail: rdm@mccunewright.com
David C. Wright, State Bar No. 177468
E-Mail: dcw@mccunewright.com
**MCCUNEWRIGHT LLP**
2068 Orange Tree Lane, Suite 216
Redlands, California  92374
Telephone:  (909) 557-1250
Facsimile: (909) 557-1275

Bryan Clobes*
E-Mail:  bclobes@caffertyclobes.com
Kelly L. Tucker*
E-Mail:  ktucker@caffertyclobes.com
**CAFFERTY CLOBES MERIWEATHER & SPRENGEL LLP**
1101 Market St., Suite 2650
Philadelphia, Pennsylvania 19107
Telephone:  (215) 864-2800
Facsimile:  (215) 864-2810

Daniel Herrera*
E-Mail:  dherrera@caffertyclobes.com
**CAFFERTY CLOBES MERIWEATHER & SPRENGEL LLP**
150 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone:  (312) 782-4880
Facsimile:  (312) 782-4485

*Pro Hac Vice Applications to be submitted

Attorneys for Plaintiffs and the Putative Classes

[LIST OF ADDITIONAL COUNSEL ON BELOW CAPTION]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN HUMPHREY, IRIS GONZALEZ, CHARLES BUNCH, ANNE STOM, DAVID WOODWARD, GREG THOMASON, LISA MASSA and DAN CARNEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAZDA MOTOR CORPORATION and MAZDA MOTOR OF AMERICA, INC.,<br><br>Defendants. | Case No.:  3:16-cv-02087<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.;<br>2. Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;<br>3. The Song-Beverly Act – Breach of Implied Warranty Violations, Cal. Civil Code §§ 1792, 1791.1, *et seq.*<br>4. Violations of California's Secret Warranty Law, Cal. Civ. Code § 1795.92 |

5.  Violations of the Texas Deceptive Trade
    Practices Act, Tex. Bus. & Com. Code Ann.
    § 17.01, *et seq.*
6.  Violations of the Florida Deceptive & Unfair
    Trade Practices Act, Fla. Stat. § 501.201, *et
    seq.*
7.  Violations of Maryland's Consumer Protection
    Act ("MCPA"), Md. Code, Com. Law § 13-
    301, *et seq.*
8.  Violations of the Washington Consumer
    Protection Act, Wash. Rev. Code § 19.86.010,
    *et seq.*
9.  Violations of the Pennsylvania Unfair Trade
    Practices and Consumer Protection Law, 73 Pa.
    Stat. § 201-1, *et seq.*
10. Violations of the Connecticut Unfair Trade
    Practices Act, Conn. Gen. Stat. § 42-110A, *et
    seq.*
11. Breach of Express Warranty
12. Breach of Implied Warranty
13. Breach of Written Warranty Under the
    Magnuson-Moss Warranty Act, 15 U.S.C.
    § 2301, *et seq.*

**JURY TRIAL DEMANDED**

ADDITIONAL COUNSEL

Joseph G. Sauder*
*E-mail:* jgs@mccunewright.com
Matthew D. Schelkopf*
*E-Mail:* mds@mccunewright.com
**MCCUNEWRIGHT LLP**
1055 Westlake Drive, Suite 300
Berwyn, Pennsylvania 19312
Telephone:  (610) 200-0580

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Megan Humphrey, Iris Gonzalez, Lorie Bender, Charles Bunch, Anne Stom, David

Woodward, Greg Thomason, Lisa Massa and Dan Carney (collectively, "Plaintiffs"), bring this action

against Defendants Mazda Motor Corporation and Mazda Motor of America, Inc., (collectively

"Defendants" or "Mazda"), by and through their attorneys, individually and on behalf of all others

similarly situated, and allege as follows:

//

//

**INTRODUCTION**

1.    This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former Mazda vehicle owners and lessees with defective clutch release levers (or "clutch forks"), bearings, and pins (or pivots) ("Clutch Release Assemblies") in Model Year 2010-15 Mazda 3 vehicles incorporating 5-speed and 6-speed manual transmissions ( "Class Vehicles").[1]

2.    This action arises from Mazda's refusal to disclose to Plaintiffs and similarly situated consumers that Class Vehicles incorporate defectively designed and/or manufactured Clutch Release Assemblies that predispose Class Vehicles to premature clutch failure ("the Defect").  The Defect, which is inherent in all Class Vehicles as of the time of sale and at all times thereafter, causes premature wear to the vehicle's manual transmission and related components, including the clutch disk and pressure plate (together with the "Clutch Release Assembly," the "Clutch Assembly"), as well as the vehicle's flywheel, and ultimately results in premature clutch system or transmission failure requiring expensive and extensive repairs.

3.    The Defect poses a significant safety risk to the operator and passengers of Class Vehicles.  When the Defect manifests—often suddenly and without warning—the vehicle's engine is unable to provide power to the transmission and the vehicle becomes inoperable.  The Defect can manifest at highway speeds or in dangerous driving conditions, subjecting the driver and occupants of Class Vehicles, others on the road, and pedestrians to an increased risk of accident, injury, or death.  The Defect presents a serious safety concern because when the Defect manifests, it severely affects the driver's ability to control the vehicle's speed, acceleration, and deceleration. This results in difficulty safely changing lanes or merging into traffic because the vehicle is not able to accelerate.  It also leads to difficulty safely stopping and parking affected vehicles.  Indeed, Plaintiffs and numerous other owners and lessees of the Class Vehicles have experienced clutch failure during operation.  Each time premature clutch failure occurred, the Defect placed Plaintiffs and those around them at immediate risk of serious injury.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

-3-

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

4.     Mazda has known of the Defect's existence for almost a decade.  It has been plagued with customer complaints concerning premature failure of the Clutch Assembly.  These failures are directly attributable to the defective Clutch Release Assembly that has been used in every Mazda 3 vehicle from Model Year 2006 onward, including Class Vehicles.  Mazda has attempted to redesign that very same Clutch Release Assembly on several occasions, as well as to incorporate the redesigned parts into subsequent model years.  In fact, Mazda most recently redesigned the Clutch Release Assembly on or around June 14, 2014, but its redesign efforts have proven unsuccessful as evidenced by the Defect's existence in Model Year 2015 Class Vehicles. Yet Mazda has refused to disclose to Class members that the Defect will cause Clutch Assemblies and transmission components to fall well short of their expected useful life.

5.     Mazda refuses to disclose the Defect's existence to prospective customers, and actively conceals the Defect from Plaintiffs and Class members at the time of sale by offering an express "bumper to bumper" warranty, which guarantees Plaintiffs and Class members that Mazda will cure any defects in the Class Vehicles.

6.     Mazda also has refused to disclose the Defect's existence when Class Vehicles are brought in for routine maintenance, instead choosing to ignore the Defect's existence and later assert that premature clutch failure was the result of "driver error" in order to charge Plaintiffs and Class members thousands of dollars to replace their Clutch Assemblies.  And it continues to conceal the Defect from such Class members by repairing their vehicles using defective Clutch Release Assemblies that also prematurely failed.

7.     Plaintiffs and Class members have communicated with Mazda and its agents to request that they remedy the Defect and any resultant damage at Mazda's expense, but Mazda has failed and/or refused to do so.  For instance, though Mazda has long been aware of the Defect in the Clutch Release Assembly, it has routinely refused to repair the Class Vehicles without charge when the Defect manifests, even when the Defect damages parts—including the clutch pressure plate and flywheel— explicitly covered by Mazda's 3 year/36,000 mile New Vehicle Limited warranty, 5 year/60,000 mile Powertrain warranty and 7 year/70,000 mile Certified Pre-Owned Powertrain Warranty.  Mazda instead

-4-

disingenuously claims its clutches fail as a result of "wear," ignoring the fact that the defective Clutch Release Assembly consists of components that are not considered "wear" items yet must be replaced.

8.      The Defect often manifests shortly outside of the warranty period—sometimes in a matter of mere weeks.  When this occurs, Mazda refuses to take any action to correct the Defect, other than to charge consumers significant out-of-pocket costs to replace the Clutch Assemblies in their vehicles.

9.      Indeed, despite notice and knowledge of the Defect from the numerous complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records—including pre-sale durability testing—Mazda has concealed the existence of the Defect, has not recalled Class Vehicles to repair the Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse its customers whom have incurred out-of-pocket expenses to repair the Defect.

10.     Some vocal and industrious Class members complain loudly enough to secure reduced repair rates or belated opportunities to purchase extended warranties that cover the cost of repairs.  But by offering these customers some semblance of warranty coverage for repairs that purportedly are not covered by warranty—and seemingly acknowledging the Defect's existence—Mazda also has violated so-called secret warranty laws, such as those enacted by California and Connecticut.

11.     In short, as a result of Mazda's unfair, deceptive, and/or fraudulent business practices, current and former owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money, property, and/or loss in value.  The unfair and deceptive trade practices committed by Mazda were conducted in a manner giving rise to substantial aggravating circumstances.

12.     Had Plaintiffs and other Class members known about the Defect at the time of purchase or lease, they would not have bought or leased Class Vehicles, or would have paid substantially less for them. Plaintiffs and many Class members also would have avoided the significant out-of-pocket costs they incurred to repair their vehicles following manifestation of the Defect.

13.     Accordingly, Plaintiffs bring this action to redress Mazda's violations of various states' consumer fraud statutes, and also seek recovery for Mazda's breach of express and implied warranties, and violations of the Magnuson-Moss Warranty Act.

-5-

**JURISDICTION & VENUE**

14.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of California and throughout the United States.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district.  Additionally, there are one or more authorized Mazda dealers within this district and Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district, including to Plaintiff Humphrey and other members of the Class; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

**PARTIES**

**Plaintiff Humphrey**

17.     Plaintiff Megan Humphrey ("Plaintiff Humphrey") is a citizen of the State of California, and currently resides in Hayward, California.

18.     In October 2014, Plaintiff Humphrey purchased a new 2015 Mazda 3 from Fremont Mazda, an authorized Mazda dealer in Newark, California, for personal, family and/or household uses.

19.     Prior to purchasing her vehicle, Plaintiff Humphrey test drove the vehicle, viewed advertisements for the vehicle and spoke with Mazda sales representatives concerning the vehicle's features.  Neither the test drive, the advertisements nor the sales representatives disclosed or revealed that the Clutch Release Assembly was defective and prone to cause the Clutch Assembly to fail prematurely.

-6-

20.     On or around May 2015, with only approximately 10,000 miles on the odometer, the clutch in Ms. Humphrey's 2015 Mazda 3 prematurely failed as a result of the Defect.  Ms. Humphrey had her car towed to a Mazda dealership, where she was informed she had to replace the entire Clutch Assembly.  After several communications with Mazda, Mazda agreed not to charge for labor for the repair, but forced Ms. Humphrey to pay $72.50 for replacement parts, despite the fact that her vehicle was still covered by Mazda's New Vehicle Limited and Powertrain warranties. The dealership effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.

21.     The Defendants, their agents, dealers, or other representatives did not inform Plaintiff Humphrey of the Defect's existence at any time either prior to or following her purchase.

22.     Plaintiff Humphrey has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with repair of the Defect and the diminished value of her vehicle. Had Defendants disclosed the Defect to Plaintiff Humphrey, she would not have bought his vehicle or would have paid less for it.

**Plaintiff Gonzalez**

23.     Plaintiff Iris Gonzalez ("Plaintiff Gonzalez") is a citizen of the State of Texas, and currently resides in San Antonio, Texas.

24.     On or about December 26, 2012, Plaintiff Gonzalez purchased a new 2012 Mazda 3 from North Park Mazda, an authorized Mazda dealer in San Antonio, Texas, for personal, family and/or household uses.  Her vehicle bears Vehicle Identification Number ("VIN"): JM1BL1W59C1668516.

25.     Prior to purchasing her vehicle, Plaintiff Gonzalez test drove the vehicle, viewed advertisements for the vehicle and spoke with Mazda sales representatives concerning the vehicle's features.  Neither the test drive, the advertisements nor the sales representatives disclosed or revealed that the Clutch Release Assembly was defective and prone to cause the Clutch Assembly to fail prematurely.

26.     In or around April 7, 2015, with only 44,421 miles on the odometer, Plaintiff Gonzalez took her vehicle to North Park Mazda because her vehicle's clutch was not engaging correctly.  North Park Mazda concluded that her clutch was slipping and the clutch disc had worn and failed.  In addition

to the clutch disc itself, North Park Mazda also replaced Plaintiff Gonzalez's Clutch Release Assembly and clutch pressure plate, and cleaned the vehicle's flywheel. North Park Mazda effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda. North Park Mazda did not inform Plaintiff Gonzalez that her Clutch Assembly failed due to a defect in the Clutch Release Assembly. Moreover, although the clutch pressure plate and flywheel are covered by Mazda's Powertrain Warranty, Mazda required Plaintiff Gonzalez to pay $1561.91 to cover the full cost of repairs, including of those parts.

27.     The Defendants, their agents, dealers, or other representatives did not inform Plaintiff Gonzalez of the Defect's existence at any time either prior to or following her purchase.

28.     Plaintiff Gonzalez has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with repair of the Defect and the diminished value of her vehicle. Had Defendants disclosed the Defect to Plaintiff Gonzalez, she would not have bought her vehicle or would have paid less for it.

**Plaintiff Bunch**

29.     Plaintiff Charles Bunch ("Plaintiff Bunch") is a citizen of the State of Washington, and currently resides in Bellingham, Washington.

30.     In or around June 2009, Plaintiff Bunch purchased a new 2010 Mazda 3 from Mazda of Everett, an authorized Mazda dealer in Everett, Washington, for personal, family and/or household uses. His vehicle bears Vehicle Identification Number ("VIN"): JM1BL1S6XA1103798.

31.     Prior to purchasing his vehicle, Plaintiff Bunch test drove the vehicle, viewed advertisements for the vehicle and spoke with Mazda sales representatives concerning the vehicle's features. Neither the test drive, the advertisements nor the sales representatives disclosed or revealed that the Clutch Release Assembly was defective and prone to cause the Clutch Assembly to fail prematurely.

32.     On or around August 16, 2012, with only 47,005 miles on the odometer, Plaintiff Bunch was forced to tow his vehicle to Skagit Mazda in Burlington, Washington. Plaintiff Bunch was operating his vehicle and attempted to traverse an incline when his vehicle suddenly lost power and the engine revved to over 4,000 RPM. Skagit Mazda concluded that his clutch was slipping and the clutch

disc had worn and failed.  In addition to the clutch disc itself, Skagit Mazda also replaced Plaintiff Bunch's Clutch Release Assembly and clutch pressure plate, and resurfaced the vehicle's flywheel. Skagit Mazda effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.  Skagit Mazda did not inform Plaintiff Bunch that his Clutch Assembly failed due to a defect in the Clutch Release Assembly.  Moreover, although the clutch pressure plate and flywheel are covered by Mazda's Powertrain Warranty, Plaintiff Bunch paid $969.95 to cover the full cost of repairs, including of those parts.

33.     Plaintiff Bunch subsequently contacted Mazda to seek warranty coverage for his vehicle. However, Mazda refused his request and refused to detail in writing its reasons for doing so.

34.     On or around August 2, 2015, with approximately 90,500 miles on the odometer, Plaintiff Bunch was forced to tow his vehicle to Rising Sun Motors ("Rising Sun") in Bellingham, Washington, a service provider specializing in Japanese vehicles.  Plaintiff Bunch was again operating his vehicle when it suddenly lost power and the engine revved.  Plaintiff Bunch did not take his vehicle to an authorized Mazda dealership because Mazda previously informed him that its Powertrain Warranty would not cover repairs to the Clutch Assembly.  Rising Sun concluded that his clutch was slipping and the clutch disc had worn and failed after only 41,500 miles.  In addition to the clutch disc itself, Rising Sun also replaced Plaintiff Bunch's Clutch Release Assembly and clutch pressure plate, and resurfaced the vehicle's flywheel.  Rising Sun effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.  Plaintiff Bunch paid $1022.54.

35.     The Defendants, their agents, dealers, or other representatives did not inform Plaintiff Bunch of the Defect's existence at any time either prior to or following his purchase.

36.     Plaintiff Bunch has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with repair of the Defect and the diminished value of his vehicle. Had Defendants disclosed the Defect to Plaintiff Bunch, he would not have bought his vehicle or would have paid less for it.

**Plaintiff Stom**

37.     Plaintiff Anne Stom ("Plaintiff Stom") is a citizen of the District of Columbia.

38.     In January 2011, Plaintiff Stom purchased a new 2010 Mazda 3 from Sheehy Mazda, an authorized Mazda dealer in Camp Springs, Maryland, for personal, family and/or household uses.  Her vehicle bears Vehicle Identification Number ("VIN"): JM1BL1H66A1240762.

39.     Prior to purchasing her vehicle, Plaintiff Stom test drove the vehicle, viewed advertisements for the vehicle and spoke with Mazda sales representatives concerning the vehicle's features.  Neither the test drive, the advertisements nor the sales representatives disclosed or revealed that the Clutch Release Assembly was defective and prone to cause the Clutch Assembly to fail prematurely.

40.     On or around July 15, 2013, with only 23,767 miles on the odometer, Plaintiff Stom was forced to tow her vehicle to Rosenthal Mazda in Arlington, Virginia.  Plaintiff Stom was operating her vehicle when its clutch suddenly failed and the vehicle stalled in the midst of traffic.  Rosenthal Mazda concluded that her clutch was slipping and the clutch disc had worn and failed.  In addition to the clutch disc itself, Rosenthal Mazda also replaced Plaintiff Stom's Clutch Release Assembly and clutch pressure plate.  Rosenthal Mazda did not inform Plaintiff Bunch that her Clutch Assembly failed due to a defect in the Clutch Release Assembly.  Rosenthal Mazda effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.  Moreover, although the clutch pressure plate is covered by Mazda's powertrain warranty—and all additional repairs should have been covered by Mazda's New Vehicle Limited Warranty—Plaintiff Stom paid $1160.13.

41.     On or around July 10, 2015, with only 38,189 miles on the odometer, Plaintiff Stom was again forced to tow her vehicle to Rosenthal Mazda.  Again, Plaintiff Stom was operating her vehicle when its clutch suddenly failed and the vehicle stalled in the midst of traffic.  Plaintiff Stom was unable to safely accelerate and merge onto a highway on-ramp.  She immediately drove the vehicle to Rosenthal Mazda.  Rosenthal Mazda concluded that her clutch was slipping and the clutch disc had worn and failed after only 14,000 miles.  In addition to the clutch disc itself, Rosenthal Mazda again replaced Plaintiff Stom's Clutch Release Assembly and clutch pressure plate.  Rosenthal Mazda effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.  And although the clutch pressure plate is covered by Mazda's powertrain warranty, Plaintiff Stom paid $1371.18 to cover the full cost of repairs, including of those parts.

-10-

42.     In or around December 2015, after investing significant money in repairing her defective Mazda 3 and out of concern that an ongoing defect existed in her vehicle, Plaintiff Stom disposed of her Mazda 3.

43.     The Defendants, their agents, dealers, or other representatives did not inform Plaintiff Bender of the Defect's existence at any time either prior to or following her purchase.

44.     Plaintiff Stom has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with repair of the Defect and the diminished value of her vehicle. Had Defendants disclosed the Defect to Plaintiff Stom, she would not have bought her vehicle or would have paid less for it.

**Plaintiff Woodward**

45.     Plaintiff David Woodward ("Plaintiff Woodward") is a citizen of the State of Florida, and currently resides in Pembroke Pines, Florida.

46.     Plaintiff Woodward purchased for personal, family and/or household uses, and still owns, a pre-driven 2010 Mazda 3 bearing Vehicle Identification Number ("VIN"): JM1BL1S50A1101730.

47.     Prior to purchasing the vehicle, Mr. Woodward test drove the vehicle and viewed advertisements for the vehicle.  Neither the test drive nor the advertisements disclosed or revealed that the Clutch Release Assembly was defective and prone to premature failure.

48.     In or around May 27, 2015, with only 53,939 miles on the odometer, Plaintiff Woodward was forced to tow his vehicle to St. Lucie Automotive ("SLA").  The vehicle lost engine power while in operation though the engine continued to rev.  SLA concluded that his clutch was slipping and the clutch disc had worn and failed.  In addition to the clutch disc itself, SLA also replaced Plaintiff Woodward's Clutch Release Assembly and clutch pressure plate, and resurfaced the vehicle's flywheel.  SLA effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.  Moreover, although the clutch pressure plate and flywheel are covered by Mazda's Powertrain Warranty, Plaintiff Woodward paid $1,002.41 to cover the full cost of repairs, including of those parts.

49.     Plaintiff Woodward has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with repair of the Defect and the diminished value of his vehicle.

50.     The Defendants, their agents, dealers, or other representatives did not inform Plaintiff Woodward of the Defect's existence at any time either prior to or following his purchase.

**Plaintiff Thomason**

51.     Plaintiff Greg Thomason ("Plaintiff Thomason") is a citizen of the State of Colorado, and currently resides in Arvada, Colorado.

52.     In or around August 2010, Plaintiff Thomason purchased a new 2010 Mazda 3 from McDonald Mazda, an authorized Mazda dealer in Littleton, Colorado, for personal, family and/or household uses.  His vehicle bears Vehicle Identification Number ("VIN"): JM1BL1S56A1150320.

53.     Prior to purchasing his vehicle, Plaintiff Thomason test drove the vehicle, viewed advertisements for the vehicle and spoke with Mazda sales representatives concerning the vehicle's features.  Neither the test drive, the advertisements nor the sales representatives disclosed or revealed that the Clutch Release Assembly was defective and prone to cause the Clutch Assembly to fail prematurely.

54.     On or around November 18, 2011, with only 6,598 miles on the odometer, Plaintiff Thomason was forced to tow his vehicle to McDonald Mazda in Littleton, Colorado.  Plaintiff Thomason was operating his vehicle when its clutch suddenly failed and the vehicle stalled in the midst of traffic.  McDonald Mazda concluded that his clutch was slipping and the clutch disc had worn and failed.  In addition to the clutch disc itself, McDonald Mazda also replaced Plaintiff Thomason's Clutch Release Assembly, flywheel and clutch pressure plate.  McDonald Mazda effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.  McDonald Mazda did not inform Plaintiff Thomason that his Clutch Assembly failed due to a defect in the Clutch Release Assembly.

55.     On or around November 21, 2012, with only 9,773 miles on the odometer, Plaintiff Thomason was again forced to tow his vehicle to McDonald Mazda.  McDonald Mazda concluded that his clutch was slipping and the clutch disc had worn and failed after only 3,000 miles.  In addition to the clutch disc itself, McDonald Mazda also replaced Plaintiff Thomason's Clutch Release Assembly, flywheel and clutch pressure plate.  McDonald Mazda effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.  Plaintiff Thomason paid $561.29, or

half the cost of the repairs, despite the fact that his vehicle was still covered by Mazda's New Vehicle Limited and Powertrain warranties. McDonald Mazda also did not inform Plaintiff Thomason that his Clutch Assembly failed due to a defect in the Clutch Release Assembly.

56.     On or around September 3, 2015, with approximately 32,012 miles on the odometer, Plaintiff Thomason yet again was forced to tow his vehicle to a mechanic—Colchin Automotive in Arvada, Colorado—due to clutch failure.  Again, Plaintiff Thomason was operating his vehicle when it suddenly lost power and the engine revved.  Plaintiff Thomason did not take his vehicle to an authorized Mazda dealership because Mazda previously informed him that any applicable warranties would not cover repairs to the Clutch Assembly.  Colchin Automotive concluded that his clutch was slipping and the clutch disc had worn and failed after only 22,000 miles.  In addition to the clutch disc itself, Colchin Automotive also replaced Plaintiff Thomason's Clutch Release Assembly and clutch pressure plate, and resurfaced the vehicle's flywheel.  Colchin Automotive effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.  Plaintiff Thomason paid $2290.95 despite the fact that his vehicle was still covered by Mazda's Powertrain warranty.

57.     The Defendants, their agents, dealers, or other representatives did not inform Plaintiff Thomason of the Defect's existence at any time either prior to or following his purchase.

58.     Plaintiff Thomason has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with repair of the Defect and the diminished value of his vehicle. Had Defendants disclosed the Defect to Plaintiff Thomason, he would not have bought her vehicle or would have paid less for it.

**Plaintiff Massa**

59.     Plaintiff Lisa Massa ("Plaintiff Massa") is a citizen of Maryland, and currently resides in Fort Washington, Maryland.

60.     In 2012, Plaintiff Massa purchased a Certified Pre-Owned Mazda 3 from North Penn Mazda, an authorized Mazda dealer in Colomar, Pennsylvania, for personal, family and/or household uses.  The vehicle's mileage at the time of purchase was approximately 9,000 miles.  Her vehicle bears Vehicle Identification Number ("VIN"): JM1BL1SG5A1342863.

-13-

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

61.     Prior to purchasing her vehicle, Plaintiff Massa test drove the vehicle, viewed advertisements for the vehicle and spoke with Mazda sales representatives concerning the vehicle's features.  Neither the test drive, the advertisements nor the sales representatives disclosed or revealed that the Clutch Release Assembly was defective and prone to cause the Clutch Assembly to fail prematurely.

62.     In or around December 4, 2015, with only 49,457 miles on the odometer, Plaintiff Massa attempted to operate her vehicle when leaving work, but the clutch would not engage.  Plaintiff Massa had the vehicle towed to Passport Mazda in Marlow Heights, Maryland, which informed her that her vehicle's clutch had failed and would require expensive repairs.  Passport Mazda did not inform Plaintiff Massa that her Clutch Assembly failed due to a defect in the Clutch Release Assembly.  Passport Mazda also informed her that the clutch failure likely would be deemed a "wear" issue that would not be covered by her Certified Pre-Owned Powertrain Warranty, and encouraged her to seek a second opinion if she did not want Mazda to complete the repairs.

63.     Plaintiff Massa subsequently towed her vehicle to Francona Service Center in Alexandria, Virginia, which confirmed her clutch disk and flywheel had failed, and that she would need to replace the entire Clutch Assembly.  Francona Service Center replaced Plaintiff Massa's flywheel and installed a "clutch kit" at a cost of $1411.43, inclusive of labor.  Francona Service Center effectuated these repairs using Original Equipment Manufacturer ("OEM") parts manufactured by Mazda.

64.     The Defendants, their agents, dealers, or other representatives did not inform Plaintiff Massa of the Defect's existence at any time either prior to or following her purchase. Plaintiff Massa has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with repair of the Defect and the diminished value of her vehicle. Had Defendants disclosed the Defect to Plaintiff Massa, she would not have bought her vehicle or would have paid less for it.

**Plaintiff Carney**

65.     Plaintiff Dan Carney ("Plaintiff Carney") is a citizen of the State of Connecticut, and currently resides in Fairfield, Connecticut.

-14-

66.     On or around September 4, 2012, Plaintiff Carney leased a new 2012 Mazda 3 from Colonial Mazda, an authorized Mazda dealer in Danbury, Connecticut, for personal, family and/or household uses.  His vehicle bears Vehicle Identification Number ("VIN"): JM1BL1L8XC1693195.

67.     Prior to purchasing his vehicle, Plaintiff Carney test drove the vehicle, viewed advertisements for the vehicle and spoke with Mazda sales representatives concerning the vehicle's features.  Neither the test drive, the advertisements nor the sales representatives disclosed or revealed that the Clutch Release Assembly was defective and prone to cause the Clutch Assembly to fail prematurely.

68.     On or around September 16, 2015, with only 30,272 miles on the odometer, Plaintiff Carney was forced to tow his vehicle to Colonial Mazda.  Plaintiff Carney attempted to operate the vehicle, but its seemingly clutch would not engage.  The tow truck driver who subsequently towed his vehicle to Colonial Mazda also confirmed that the clutch would not disengage.  Colonial Mazda concluded that his clutch was slipping.   Colonial Mazda replaced Plaintiff Carney's Clutch Release Assembly using OEM parts, but did not replace the clutch disk itself.  Colonial Mazda did not inform Plaintiff Carney that his repairs were necessitated by a defect in the Clutch Release Assembly.  Mazda extended goodwill coverage to Mr. Carney, however, Mr. Carney was still required to pay $237.77 to cover the cost of parts associated with the repair.

69.     The Defendants, their agents, dealers, or other representatives did not inform Plaintiff Carney of the Defect's existence at any time either prior to or following his purchase.

70.     Plaintiff Carney has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with repair of the Defect and the diminished value of his vehicle. Had Defendants disclosed the Defect to Plaintiff Carney, he would not have bought his vehicle or would have paid less for it.

**The Defendants**

71.     Defendants are automobile design, manufacturing, distribution, and/or service corporations doing business within the United States.  Furthermore, Defendants design, develop, manufacture, distribute, market, sell, lease, warrant, service, and repair passenger vehicles, including the Class Vehicles.

-15-

72.     Defendant Mazda Motor Corporation ("MMC") is a Japanese corporation.  MMC is the parent corporation of Mazda Motor of America, Inc.  MMC, through its various entities, designs, manufactures, markets, distributes and warrants Mazda automobiles throughout the fifty States.

73.     Defendant Mazda Motor of America, Inc. ("MMA") is incorporated and headquartered in the State of California.  MMA is MMC's U.S. sales and marketing division, which oversees sales and other operations across the United States.  MMA distributes Mazda parts and vehicles, which are then sold through its network of dealers.  Money received from the purchase of a Mazda vehicle from a dealership flows from the dealer to MMA.

74.     MMC and MMA sell Mazda vehicles through a network of dealerships that are the agents of MMC and MMA.

75.     Upon information and belief, Defendant MMC communicates with Defendant MMA concerning virtually all aspects of the Mazda products it distributes within the United States.

76.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and other decisions regarding the Clutch Release Assembly and the Defect within the Class Vehicles, including whether to provide warranty or goodwill coverage for the Defect, were performed exclusively by Defendants MMC and MMA.

77.     Upon information and belief, Defendants MMC and MMA developed the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

MMC and MMA are collectively referred to in this complaint as "Defendants" or "Mazda" unless identified separately.

78.     Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every defendant was acting as an agent and/or employee of each of the other defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other defendants.  In addition, each of the acts and/or omissions of each defendant alleged herein were made known to, and ratified by, each of the other defendants.

-16-

79.     Accordingly, there exists, and at all times herein mentioned existed, a unity of ownership between MMC, MMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants and each of them, would, under the circumstances set forth in this Complaint, sanction fraud or promote injustice.

## CALIFORNIA LAW APPLIES

80.     It is appropriate to apply California law to the claims of the Class because California's interest in this litigation exceeds that of any other state.

81.     Mazda conducts continuous and substantial business in California.

82.     Defendant MMA is located in California and is the sole U.S. entity responsible for distributing, selling, leasing and warranting Mazda vehicles. Every aspect of Mazda's U.S.-operations are housed in its Irvine, California facilities.[2]

83.     From its Irvine California headquarters, MMA imports and distributes Mazda vehicles, parts and accessories.[3]  It also conducts technical trend surveys and research, design development, evaluation testing, and vehicle certification activities for the North American market.[4]

84.     MMA's key executives and officers also operate from MMA's Irvine facility.  MMA's president and CEO, CFO, Senior Vice President of U.S. Operations, and various vice presidents reside in California and work from MMA's Irvine facility.[5]

85.     MMA's warranty policies also emanate from California, from where MMA oversees Mazda's National Warranty Operations (NWO).  NWO is headquartered in Irvine, California and overseen by John Encheff.[6]  Among other things, NWO reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles.  Upon

---

[2] Mazda previously produced Mazda "6" vehicles at the AutoAlliance International assembly plant, a Flat Rock, Michigan facility owned and operated as a Mazda-Ford joint venture.  Mazda ceased its limited manufacturing efforts at this plant in 2012, and Ford subsequently retook full management control of the plant.
[3] http://www.mazda.com/en/about/profile/activity/northamerica/
[4] Id.
[5] See Executive Profiles available at http://www.mazdausamedia.com/index.php?s=31623&cat=2835.
[6] http://www.zoominfo.com/p/John-Encheff/310614217.

-17-

information and belief, Defendants dictate that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendants decide to audit the dealership.  NWO collects this information, makes it available to other Mazda divisions, and assists in deciding whether to extend warranty coverage to particular defects, such as those complained of herein.

86.     Mazda's Customer Experience Center also is located in MMA's Irvine campus. Customer Experience representatives are responsible for fielding customer complaints and monitoring customer complaints posted to Mazda or third-party Web sites.

87.     Based on the foregoing, the policies, practices, acts and omissions giving rise to this Action were developed in, and emanated from, Defendants' headquarters in Irvine, California.  As detailed below, Mazda also came to know, or should have come to know, of the Defect through the activities of Mazda divisions and affiliated entities located within California.  Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

## TOLLING OF STATUTES OF LIMITATIONS

88.     Any applicable statute(s) of limitations have been tolled by Mazda's knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

89.     In addition, even after Plaintiffs and Class Members contacted Mazda and/or its authorized dealers for vehicle repairs concerning the Defect, they were routinely told by Mazda and/or through its dealers that the Class Vehicles were not defective and that premature failure of the Clutch Assembly was a normal "wear" condition caused by driver error rather than a defective Clutch Release Assembly.

90.     Mazda was and remains under a continuing duty to disclose to Plaintiffs and the members of the Class the true character, quality and nature of the Class Vehicles, that the Defect is based on a poor design, that it will require costly repairs, poses a safety concern, and diminishes the resale value of

the Class Vehicles.  As a result of Mazda's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.     The Defect within Class Vehicles.**

91.    Mazda is a multinational corporation with hundreds of thousands of employees worldwide.

92.    The "Mazda 3," the vehicle model at the heart of this litigation, is one of its most popular U.S. offerings.  Class Vehicles were manufactured with both automatic and manual transmissions, including 5-speed and 6-speed manual transmissions.

93.    A manual transmission engine refers to an engine that incorporates a driver-operated clutch engaged and disengaged by a foot pedal to transfer torque from a vehicle's engine to its transmission, thereby providing power to the vehicle's wheels. A diagram of a synchronized five-speed manual transmission engine is below:



94.    In the diagram above, the green shaft, referred to as the input shaft, protrudes and provides power from the engine.  The red shaft and gears, which rotate as one unit, are referred to as the countershaft or layshaft. These are also connected as a single piece, so all of the gears on the layshaft and the layshaft itself spin as one unit. As the output shaft spins, it transfers power to the layshaft.

95.    The yellow shaft, or output shaft, is a splined shaft that connects directly to a vehicle's drive shaft through the differential to the drive wheels of the car. It is the output shaft that provides

power to the vehicle's wheels.  The blue gears are transmission gears, or the "gears" that drivers "shift" during vehicle operation.  Transmission gears are always in mesh and rotating, but gears can freely rotate or be "locked" to the output shaft, thereby providing power to it.

96.     The purple gears, referred to as collars (or dog collars), slide sideways[7] along the shaft so that the teeth (or dogs) on its inner surface may bridge two circular rings with teeth on their outer circumference: one attached to the gear, one to the output shaft. When the rings are bridged by the collar, that particular gear is rotationally locked to the shaft and determines the output speed of the transmission. The gearshift lever manipulates the collars using a set of linkages, which are arranged so that one collar may be permitted to lock only one gear at any one time; when "shifting gears", the locking collar from one gear is disengaged before that of another is engaged.

97.     The gears determine the output shaft's actual "output," the speed at which the vehicle's wheels rotate, by transferring power from the input shaft to the output shaft at particular ratios.  For instance, the slowest gears (typically designated the "first" gear) allow for three to four rotations of the input shaft for each revolution of the output shaft, while higher gears lock the output shaft to spin at speeds equal to or greater than the input shaft (1:1 or lower).

98.     The clutch plays an important role in this process by engaging and disengaging the transmission from the engine and allowing the driver to shift gears or stop the vehicle without killing the engine, which continues to spin at a constant speed so long as power is provided to the engine. The clutch allows for smooth engagement of a spinning engine to a non-spinning transmission by controlling the slippage between them.  A diagram of a typical Clutch Assembly is below:

//

//

//

//

_____

[7] In most modern engines, the gear selector does not engage or disengage the actual gear teeth, which are permanently meshed to the gears. The gear selector instead locks one of the freely spinning gears to the output shaft, which then spins together with that gear.  The output shaft's speed relative to the layshaft is determined by the ratio of the two gears: the one permanently attached to the layshaft, and the gear locked to the output shaft.

-20-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



99.     Inside the assembled clutch housing, which is located between the engine and the gearbox, are a flywheel connected to the engine and a clutch plate connected to the transmission, both along the vehicle's input shaft.  The flywheel and clutch plate are essentially disks, the exposed sections of which become bound together through friction.  Unless a vehicle's clutch pedal is engaged by the driver, the clutch cover's diaphragm springs – typically small metal fingers protruding into the center of the clutch cover – apply pressure to the pressure plate, which in turn presses the clutch disk (the driven plate in the diagram above) into the flywheel.  This locks the engine to the transmission input shaft and causes them to spin at the same speed, power that is later transferred to the output shaft via the layshaft. Below are images of the clutch disc and clutch cover (which incorporates the pressure plate) installed in MY 2010 and later Class Vehicles.

//

//

//

//

//

//

-21-

 

100.     When the clutch pedal is pressed, a cable or hydraulic piston applies force to the clutch fork, which is secured in pace by the ball stud or pivot pin.  The fork presses the throwout bearing against the middle of the diaphragm spring, which in turn causes the spring to pull the pressure plate away from the clutch disc and releases the clutch from the spinning engine.

101.     The clutch fork, pivot pin and throwout bearing (the "Clutch Release Assembly") are integral to proper vehicle operation.  If the Clutch Release Assembly's components do not operate in unison—for instance, if the throwout bearing is not properly released from the clutch fork, or the clutch fork is unable to return to its original position—the clutch plate will not properly engage with the flywheel.  The vehicle then experiences "slippage" as the two disks fail to make proper contact with one another, eroding the discs' friction material.  As the material erodes, the flywheel and clutch plate become unable to properly bind to one another and the clutch is no longer able to transfer power to the output shaft.

102.     The Clutch Release Assembly in Class Vehicles suffers from such a defect.  All Class Vehicles were manufactured with Clutch Release Assemblies that are defectively designed and/or manufactured.  All Clutch Release Assemblies used in Model Year 2006-2015 Mazda 3 vehicles are plagued by the very same design and/or manufacturing Defect, and the Defect manifests itself in all Class Vehicles in an identical fashion.  Mazda has redesigned the entire Clutch Assembly on several occasions, however, its efforts have failed.

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

103.     Certain Clutch Release Assembly components, including the clutch fork and the throwout bearing, were improperly designed and/or manufactured by Mazda such that they do not properly fit together and cannot interact as designed.  When the clutch is engaged, the throwout bearing may stick to the clutch fork, preventing the clutch from releasing from the flywheel and resulting in insufficient contact, or "slippage," between the two friction disks.  Due to imperfect contact, the clutch plate and the flywheel do not rotate in unison and instead rotate at different speeds, which causes substantial friction and wear on these parts.  For example, when the Defect manifests the flywheel may rotate at 1,500 rotations per minute, while the clutch plate rotates at 1,400 rotations per minute.  The friction caused by the slippage very quickly wears down the surfaces of the clutch plate and the flywheel, which in turn causes the entire Clutch Assembly to fail and renders Class Vehicles inoperable.

104.     Because the parts affected by the Defect are internal, mechanical components and the failure manifests suddenly and without warning, Plaintiff and Class members have no warning that the Defect has manifested until it causes a complete failure of the Clutch Assembly.

**B.     Mazda's Longstanding Knowledge of the Defect**

105.     Decades ago, vehicle clutches failed in under 50,000 miles.  But today, clutches are manufactured, and expected, to provide beyond 100,000 miles of service.[8]  For instance, prior to purchasing his Class Vehicle, Plaintiff Bunch owned and operated four manual transmission Mazda vehicles for over 200,000 miles without ever replacing the Clutch Assembly.

106.     Mazda itself expects the clutch plates and flywheels installed in Class Vehicles to provide a long useful life as evidenced by Mazda's recommended maintenance program, which provides for regular inspection and repair of consumable parts but not the vehicle's Clutch Assembly.  For instance, the 2010 Mazda 3 owner's manual suggests, *inter alia*, inspection and potential replacement of brake disks every 15,000 miles.  The manual also suggests inspecting and potentially replacing drive belts,

---

[8] *See* Tony Molla & Vyvyan Lynn, The Complete Idiot's Guide to Auto Repair 220 (DK 2007), *excerpt available at*
https://books.google.com/books?id=NV96oQETIDYC&pg=PA220&lpg=PA220&dq=clutch+should+last+100000+miles&source=bl&ots=21oUJLOwZ0&sig=Zk-r3NthLi53kYsV91HJe40p77E&hl=en&sa=X&ved=0CFMQ6AEwB2oVChMIo9vUxI6GxgIVtEyMCh3l4wBt#v=onepage&q=clutch%20should%20last%20100000%20miles&f=false.

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

another consumable part integral to proper vehicle operation, every 35,000 miles. But nowhere does Mazda suggest regular inspection of the vehicle's clutch.

107.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Mazda has known since at least 2006 that Mazda 3 vehicles are prone to premature clutch failure due to the Defect in the Clutch Release Assembly. Indeed, the Internet is replete with examples of blogs and other Web sites where consumers have complained of the exact same Defect within the Class Vehicles. Upon information and belief, Mazda, through (1) their efforts to redesign the subject parts, (2) records from the National Highway Traffic Safety Administration ("NHTSA"), (3) their own records of customers' complaints, (4) dealership repair records, (5) warranty and post-warranty claims, (6) internal durability testing, and (7) other various sources, was well aware of the Defect but failed to notify consumers of the nature and extent of the problems with the Clutch Release Assemblies in Class Vehicles, or provide any adequate remedy.

### i.    Mazda Implements Several Secret Redesigns of Clutch Release Assembly for 2006 Mazda 3 Vehicles

108.    Due to pervasive reports of premature clutch failure, Mazda has implemented several secret redesigns of its Clutch Release Assemblies in Mazda 3 vehicles, with the initial redesign beginning before Class Vehicles were sold or leased to Plaintiffs and Class member consumers.

109.    At no time relevant to this litigation did Mazda disclose the Defect or its secret redesigns to Plaintiffs or Class members. Indeed, each Class Vehicle contained at the time of sale or lease a Clutch Release Assembly that Mazda knew to be defective at that time and subsequently redesigned without disclosing the same to Class members. Upon information and belief, Mazda's first attempt at an effective repair of the defective Clutch Release Assemblies began prior to the sale and lease of Class Vehicles to Plaintiffs and Class members.

110.    Each component of the Clutch Release Assembly has been redesigned several times beginning with, at the latest, the Clutch Release Assembly components installed in 2006 model year Mazda 3 vehicles.[9] For example, as described above, Plaintiff Bender's Mazda 3 had the Clutch system

---

[9] Some Web sites suggest the previous designs of the clutch fork or lever (Part Nos. L50116530, L301-16-530A; L301-16-530B; L301-16-530C; L301-16-530D; L30116530A; L30116530B; L30116530C;

completely replaced twice within the space of 15 months. Each of those replacements contained one or more redesigned Clutch Release Assembly components for a total of three different Clutch Release Assemblies installed in Plaintiff Bender's vehicle over the course of her ownership.

111.    As of the date of this filing, Mazda has still not revealed to Plaintiffs and Class members that the Clutch Release Assemblies installed in their vehicles are defective. Indeed, upon information and belief, the latest redesign to a Clutch Release Assembly component was implemented on or around June 14, 2014, well after at least some Model Year 2015 Class Vehicles were manufactured. Now, all Mazda 3 vehicles from 2004 onward are retrofitted with newly re-designed Clutch Release Assemblies when the Clutch Assembly in those Class Vehicles fails due to the Defect.

112.    At all times relevant to this litigation, Mazda has concealed the Clutch Release Assembly redesigns and its inability to repair the Defect from Plaintiffs and Class members. In furtherance of this deceitful course of conduct, Mazda, through its agents, concealed the true nature of the Defect by informing Plaintiffs and Class members—most of whom have years of experience operating manual transmission vehicles—that the premature failure of their clutch is the result of "driver error" rather than acknowledge the multiple redesigns of the defective parts, even where the clutch fails at less than 15,000 miles.

**ii.    Complaints Lodged with NHTSA.**

113.    There exist a large number of relevant customer complaints, many of which indicate Mazda was made aware of the Defect when affected vehicles were submitted for service, on the National Highway and Traffic Safety Administration ("NHTSA") Office of Defect Investigations ("ODI") Web site, www.safercar.gov, as well as other customer forums and blogs addressing car defect and safety issues. Yet Mazda has not taken any steps to recall the Class Vehicles and repair the Defect, or to reimburse customers who have incurred expenses in connection with repairing the Defect.

114.    Federal law requires automakers like Mazda to be in close contact with NHTSA

---

L30116530D) were actually used from model year vehicles from 2004 onward. *See, e.g.*, Mazda of Nola Ebay Sale, http://www.ebay.com/itm/MAZDA-OEM-04-12-3-Clutch-Fork-L50116530-/301454810766?hash=item46301b5e8e.

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

115.   Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements.  *Id*. Similarly, automakers should and do monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*.  Thus, Mazda knew or should have known of the many complaints about the Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints that alerted, or should have alerted, Mazda to the Defect.

116.   NHTSA's publicly available ODI database contains only complaints made in the past five years. Mazda, however, had contemporaneous and on-going access to NHTSA consumer complaint data (which information cannot be obtained by Plaintiffs without discovery).  Indeed, on information and belief, Defendants Customer Experience division is responsible for monitoring in real-time, *inter alia*, complaints filed by consumers with NHTSA ODI.

117.   The following are but a few examples of the many complaints concerning the Defect available through NHTSA ODI's Web site, www.safercar.gov.  Because complaints made before late 2010 are not readily accessible, however, the complaints referenced below likely represent only a subset of relevant complaints lodged with NHTSA.  The complaints nevertheless reveal that Defendants, through their network of dealers and repair technicians, were made aware of the Defect.  In addition, the complaints indicate that despite having knowledge of the Defect and the exact vehicles affected thereby, Defendants and their agents refused to diagnose the Defect or attempt to repair it while the Vehicles were still under warranty. The comments reproduced below are but a sampling of available complaints:

//
//
//
//

-26-

| Model Year | Complaint Date | Comments |
|---|---|---|
| 2006 | 09/01/2011 | I FIRST NOTICED THAT MY CLUTCH WAS NOT COMING BACK ALL THE WAY AFTER CHANGING GEARS. I WAS ABLE TO USE THE TOP OF MY FOOT TO LIFT THE CLUTCH UP WITHOUT DIFFICULTY AND IT WOULD POP BACK UP. I IMMEDIATELY CALLED THE MAZDA DEALERSHIP WHICH, I WAS CURRENTLY ABOUT 2 MILES FROM. I EXPLAINED WHAT HAPPENED AND THEY SAID TO MAKE AN APPOINTMENT IN THE MORNING. I DROVE HOME ABOUT 3 MILES. THE NEXT DAY I CALLED TO MAKE AN APPOINTMENT. NO ONE RETURNED MY PHONE CALL, SO I STARTED TO DRIVE MY CAR TO THE DEALERSHIP AND IT BECAME MORE DIFFICULT TO SHIFT INTO GEAR, THAN I BROKE DOWN COMPLETELY AFTER ONLY DRIVING ABOUT 3 MILES AND ONLY ABOUT 3 TRAFFIC LIGHTS. AFTER THAT, I COULD PUT THE STICK SHIFT INTO GEAR BUT WHEN I LIFTED THE CLUTCH UP IT WOULD NOT ENGAGE. I BOUGHT MY CAR BRAND NEW AT MAZDA AND HAD ALL MY REGULAR MAINTENANCE AND INSPECTIONS AT THE MAZDA DEALERSHIP ASIDE FROM REGULAR OIL CHANGES WHICH, I GOT DONE AT A LOCAL SHOP. I HAVE ALWAYS DRIVEN A STICK SHIFT AND NEVER HAD ANY PROBLEMS WITH CLUTCHES. I WAS ALSO THE SOLE DRIVER OF MY CAR. WHEN I GOT HOME I DID A LITTLE RESEARCH AND SOMEONE RECOMMENDED FILLING OUT A COMPLAINT AT THIS WEBSITE. IF I HAD NOT STUMBLED ACROSS THAT I WOULD BE NONE THE WISER. WHILE LOOKING OVER THE SITE, I NOTICED THAT THERE WAS A RECENT INVESTIGATION OF MAZDA RX8. IT STATED THAT AFTER THE INVESTIGATION, MAZDA HAS INFORMED ODI THAT IT CONDUCTED AN OWNER NOTIFICATION OF AN EXTENDED WARRANTY COVERAGE PROGRAM INCREASING THE CLUTCH PEDAL ASSEMBLY WARRANTY TO 8 YEARS AND LIMITED AT 100K MILES FOR MODEL YEARS 2004 THROUGH 2009 RX8 VEHICLES. MY QUESTION IS, HOW CAN A CLUTCH HAVE A LIFETIME OF 100,000 MILES IN AN RX8 WHICH IS A SPORTIER CAR AND PROBABLY RECEIVES MORE ABUSE THAN OTHER MODELS AND ONLY GOOD FOR 12,000 IN A 2006 MAZDA 3/HATCHBACK? COULD YOU LOOK INTO ALL MODELS. THANK YOU FOR YOUR TIME. *TR |
| 2006 | 08/07/2008 | 2006 MAZDA 3 WARRANTY ISSUES. CONSUMER STATES THAT THE DEALERSHIP REFUSED TO HONOR THE VEHICLE WARRANTY. *NJ THE CONSUMER STATED THE VEHICLE SUDDENLY LOST POWER WHILE DRIVING ON THE HIGHWAY WITH THE CRUISE CONTROL ENGAGED. THE CONSUMER |

-27-

| | | |
|---|---|---|
| | | HAD THE VEHICLE TOWED THE DEALERSHIP. LATER THAT DAY, THE DEALERSHIP INFORMED THE CONSUMER THAT THE CLUTCH HAD BLOWN AND THEY SUSPECTED DRIVER ABUSE BASED ON THE TREAD WEAR OF THE TIRES. THE CONSUMER WAS TOLD A NEW CLUTCH, PRESSURE PLATE, PILOT BEARING AND FLYWHEEL WERE NEEDED. |
| 2007 | 11/11/2009 | CLUTCH PEDAL WAS DEPRESSED, SHIFTING FROM 3RD TO 2ND AS THE GEAR LEVER HIT NEUTRAL THERE WAS A FAINT POPPING NOISE, CLUTCH PEDAL FROZE IN THE DOWN POSITION, I SENSED SOMETHING WRONG AND ALLOWED FORWARD MOMENTUM TO PULL TO THE CURB. I ATTEMPTED TO FINISH SHIFTING, GEARS WERE UNUSABLE, CLUTCH PEDAL FROZEN DOWN. THIS ALL OCCURRED IN A HALF A SECOND OR LESS. LUCKILY I WAS IN THE RIGHT LANE AND THERE WAS SURPRISINGLY LITTLE TRAFFIC. 2 BLOCKS FURTHER AND THIS WOULD HAVE OCCURRED IN HEAVY RUSH HOUR TRAFFIC AT 65 MILES AN HOUR. AFTER 5 MINUTES OF MAKING PHONE CALLS FOR ASSISTANCE, THE CLUTCH PEDAL RELEASED AND I WAS ABLE TO SLOWLY LIMP TO THE DEALERSHIP. THERE WERE NO PRIOR SIGNS OF CLUTCH WEAR EXCEPT FOR A COUPLE PRIOR DAYS IN WHICH THE CLUTCH FELT A LITTLE SOFTER THEN NORMAL BUT SO LITTLE I COULDN'T TELL IF WAS THE NEW SHOES OR THE CAR. THE CAR HAS 38,000 MILES. IT IS USED PRIMARILY TO GET TO WORK WITH 50/50 STREET AND HIGHWAY DRIVING AND ROUGHLY 36 MILES A DAY. WITH 4 MODELS OF THIS BRAND OVER 20 YEARS I HAVE NEVER HAD A CLUTCH REPAIR WITH AN AVERAGE LIFE OF 90-100K MILES. |
| 2008 | 10/01/2010 | PREMATURE CLUTCH PROBLEMS AT 31K MILES. MY CLUTCH CHATTERS AND ENGAGES POORLY DUE TO A POORLY MADE CLUTCH, WHICH MAZDA WILL NOT REPLACE UNDER WARRANTY, EVEN THOUGH THE VEHICLE IS WITHIN THE WARRANTY PERIOD. |
| 2008 | 12/23/2009 | FAILURE OF CLUTCH ASSEMBLY AT 27,000 MILES REQUIRING COMPLETE REPLACEMENT. |
| 2009 | 04/25/2011 | PREMATURE TRANSMISSION FAILURE DUE TO CATASTROPHIC CLUTCH FAILURE FROM THE CLUTCH PLATE ITSELF ON 2009 MAZDA3 WITH ONLY 18,000 MILES ON IT. CAR WAS BOUGHT NEW FROM DEALERSHIP. CLUTCH FAILURE RESULTED IN AN INCIDENT OF LOSS OF CONTROL OVER THE VEHICLE IN 3 LANES OF TRAFFIC DUE TO LOSS OF POWER THROUGH THE DRIVELINE. |
| 2010 | 05/11/2014 | I WAS DRIVING DOWN THE ROAD ALL THE SUDDEN MY CAR STOPPED AND WOULD NOT ENGAGE. APPARENTLY MY CLUTCH JUST RANDOMLY WENT OUT. I HAVE TO |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| | | |
|---|---|---|
| | | COMPLETELY REPLACE THE ENTIRE THING $1000. MAZDA SAID ITS A NORMAL WEAR AND TEAR AT 67000 MILES WE SHOULD NOT BE DOING A COMPLETE REPLACEMENT OF THE CLUTCH. IT SHOULD NOT JUST RANDOMLY GO OUT WITHOUT ANY WARNING. |
| 2010 | 11/15/2012 | CLUTCH GAVE OUT AT 33,000 MILES. THAT IS ABSURD. MAZDA CLAIMS ITS UNDER THEIR "WEAR AND TEAR" BUT THIS IS NOT A NEW PROBLEM FOR A LOT OF PEOPLE. PREMATURE CLUTCH FAILURE SHOULD HAVE BEEN A RECALL ON MAZDA 3'S BACK IN 2011. |
| 2010 | 02/06/2014 | CLUTCH FAILURE WHILE DRIVING RESULTING IN DIFFICULTY STEERING AND LOSS OF CONTROL OF THE VEHICLE. AS THE CARE HAD A LOW MILEAGE AND IS NEW YOU ARE NOT EXPECTING THIS KIND OF PROBLEM. NEED TO INVESTIGATE WHY THESE CLUTCHES ARE FAILING, SPECIFICALLY IN THE 2010 MODEL. |
| 2010 | 06/13/2013 | WAS DRIVING ON HIGHWAY AND RPM STARTED TO REV UP, COULDN'T SWITCH GEARS AND CLUTCH GAVE OUT FROM UNDERNEATH ME. LUCKILY WAS ABLE TO ROLL OFF THE HIGHWAY WHEN I NOTICED THE PROBLEM. OF COURSE ONE PROBLEM LEADS TO ANOTHER BATTERY THEN DIED AT THE SHOP, HAD TO REPLACE AS WELL, THIS COMES NOT EVEN A MONTH AFTER THE ROTORS FOR BRAKES HIT THE FAN. THIS HAS GOT TO BE ONE OF THE MOST PROBLEMATIC CARS I HAVE SEEN. A CLUTCH DYING LESS THEN 3 YEARS IS VERY STRANGE AND HAS HAPPENED TO OTHERS AS WELL WITH THIS MODEL. |
| 2010 | 01/28/2013 | TL* THE CONTACT OWNS A 2010 MAZDA MAZDA3. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 35 MPH, THE DRIVER NOTICED A BURNING ODOR IN THE VEHICLE. ADDITIONALLY, THE CONTACT HEARD A CLICKING SOUND WHEN DRIVING AT SLOW SPEEDS. THE VEHICLE WAS TOWED TO THE DEALER FOR DIAGNOSTIC TESTING. THE TECHNICIAN STATED THAT THE CLUTCH NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 30,000. |
| 2010 | 10/01/2012 | AT AROUND 24,000 MILES I EXPERIENCED A PARTIAL CLUTCH FAILURE (COULDN'T SHIFT OUT OF GEAR) THAT WENT AWAY AFTER PUMPING THE CLUTCH PETAL. I ASKED THE DEALERSHIP ABOUT THIS AND WAS TOLD NOT TO WORRY ABOUT IT, AND THAT IT WAS PROBABLY DUE TO CLUTCH FREEZING UP IN THE COLD. AT AROUND 30,000 MILES THE CAR STARTED SHAKING WHENEVER I ENGAGED/DISENGAGED THE CLUTCH. IN ORDER TO GET THE CLUTCH TO ENGAGE AT ALL I HAD TO LET OFF THE |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| | | |
|---|---|---|
| | | CLUTCH PETAL MUCH SLOWER THAN USUAL. I TOOK THE CAR TO THE ORIGINAL DEALERSHIP IT WAS PURCHASED AT AND WAS TOLD THE FRICTION DISC WAS WORN OUT, AND THAT THIS WAS A WEAR AND TEAR ITEM AND THEREFORE NOT UNDER WARRANTY. IN ADDITION, THEY SAID THAT THE PILOT BEARING HAD FAILED. AFTER GETTING THESE ITEMS REPLACED A LOUD CREAKING NOISE OCCURS WHENEVER ENGAGING/DISENGAGING THE CLUTCH OR ACCELERATOR PEDALS. THE ISSUE IS STILL NOT RESOLVED. |
| 2010 | 10/23/2012 | I BROUGHT MY CAR INTO AN AUTHORIZED MAZDA DEALER FOR AN OIL CHANGE AND MENTIONED THAT I NOTICED A SLIGHT SLIPPING IN THE CLUTCH. I WAS LATER INFORMED BY THE DEALER THAT EVEN THOUGH I HAD JUST 33,000 HIGHWAY MILES, THE ENTIRE CLUTCH ASSEMBLY NEEDED TO BE REPLACED. EVEN THOUGH I WAS STILL WITHIN THE WARRANTY PERIOD, THEY TOLD ME THAT IT WOULD NOT BE COVERED. I COMPLAINED TO MAZDA CUSTOMER CARE AND GOT NO WHERE. THE MOST FRUSTRATING PART IS THAT AFTER THE DEALER COMPLETED THE REPAIR, THEY TOLD ME THAT THE CLUTCH SHOWED NO SIGNS OF ABUSE AND THAT IN THEIR PROFESSIONAL OPINION, THIS WAS A PREMATURE FAILURE OF THE CLUTCH. EVEN WITH THIS INFORMATION, MAZDA ITSELF STILL WOULD NOT COVER THE REPAIR. |
| 2010 | 10/26/2012 | CLUTCHES ARE SUPPOSED TO BE BULLET PROOF. BEING ONE OF THE MAIN PARTS OF THE CAR AND NECESSARY TO IT'S BASIC FUNCTION, CLUTCHES SHOULD BE INCLUDED IN THE 5 YEAR/60,000 MILES WARRANTY. BUT THEY'RE NOT. THE CLUTCH ON THE 2010 MAZDA3 IS ONLY COVERED FOR 7500 MILES. THAT'S SUSPICIOUS IN AND OF ITSELF. SO HERE'S MY STORY, MY CLUTCH GAVE OUT AFTER 50,000 MILES. NO WARNING OR ANYTHING. THE MECHANIC I TOOK IT TO SAID IN THE 32 YEARS HE'S BEEN FIXING CLUTCHES, HE'S NEVER SEEN ANYTHING SO HORRIFIC. HE HAD TO HAVE METAL FABRICATORS COME IN AND MAKE PARTS BECAUSE SOME OF THE SURROUNDING EQUIPMENT WAS SO WARPED. MAZDA CLAIMS NO RESPONSIBILITY FOR THEIR FAULTY PRODUCT. I'VE READ STORIES ONLINE WHERE PEOPLE REPORT THEIR CLUTCH BLOWING OUT AT 14,000 MILES. EDMUNDS.COM, A LEADER IN CAR RESOURCES RATES THE CLUTCH PROBLEM ON THIS SPECIFIC CAR AT A 9.7/10. IT'S A FAULTY PART IN A CAR AND MAZDA WILL NOT EVEN CONSIDER IT TO BE AN ACTUAL THING. IT'S NOT RIGHT AT ALL. |
| 2010 | 09/20/2012 | THE CLUTCH ON MY MANUAL TRANSMISSION 2010 MAZDA3 SUDDENLY STOPPED OPERATING PROPERLY. IT GRINDS |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| | | |
|---|---|---|
| | | GEARS AND DOES NOT CHANGE GEARS WHEN I SHIFT. I DROVE THE VEHICLE IN TO A MAZDA DEALER ON SATURDAY, WITH A WEEK LEFT ON MY WARRANTY. ON MONDAY, THEY CALLED TO TELL ME THAT THEIR TECHNICIAN COULD NOT EVEN DRIVE MY CAR AS THERE WAS NO CLUTCH PAD! I WONDERED HOW I COULD DRIVE THE CAR TO THEM, BUT ONCE IT WAS IN THEIR POSSESSION, IT WAS SUDDENLY UNDRIVEABLE. I AM NOW BEING FORCED TO PAY $1100 TO REPLACE THE CLUTCH, BECAUSE THEY SAY MY WARRANTY DOES NOT COVER NORMAL WEAR AND TEAR. I ASKED HOW A COMPLETELY DISINTEGRATED CLUTCH PAD IS "NORMAL WEAR AND TEAR" ON A VEHICLE WHICH HAS ONLY BEEN DRIVEN 16K MILES! THIS COULD HAVE BEEN DANGEROUS HAD IT FAILED COMPLETELY WHILE DRIVING! I FILED A CLAIM WITH THE BETTER BUSINESS BUREAU. I ALSO CALLED THE MAZDA CORPORATE OFFICE FOR ASSISTANCE, WHERE I WAS TOLD I COULD SIMPLY VOICE A COMPLAINT. "TOM" REFUSED TO ALLOW ME TO SPEAK WITH A SUPERVISOR OR ANYONE HIGHER THAN HIMSELF (HE WAS JUST A CALL-CENTER EMPLOYEE). HE OFFERED TO CALL THE DEALERSHIP AND ASK THEM TO PROVIDE ME WITH A DISCOUNT. WHEN I SPOKE TO THE DEALER TODAY, THEY SAID TOM DID CALL THEM, BUT NEVER ASKED FOR ANY DISCOUNTS! ALL HE DID WAS EXPLAIN THAT MAZDA HAS NOT RECALLED THE CLUTCH, SO MY WARRANTY WOULD NOT COVER THE NECESSARY REPLACEMENT. MAZDA SOLD ME A SUB-PAR VEHICLE, AND NOW THEY LIED ABOUT THEIR WAY OF HANDLING THE ERROR. I LOOKED ONLINE AND HAVE FOUND SEVERAL COMPLAINTS ON THE SAME VEHICLE CLAIMING THE EXACT SAME PROBLEMS ON A LOW-MILEAGE CLUTCH. THIS CLEARLY IS A MANUFACTURING DEFECT, NOT DRIVER ERROR. IT SHOULD BE RECALLED AS THE PROBLEM IS SO COMMON IN THIS EXACT MAKE AND MODEL WITH SUCH LOW MILES. $1100 LATER AND I GET A NEW SHODDY CLUTCH WHICH I WILL HAVE TO REPLACE IN ANOTHER 16K MILES. DISAPPOINTED AND WILL NEVER OWN ANOTHER MAZDA AGAIN IF THIS IS NOT RESOLVED. |
| 2010 | 02/01/2012 | I HAVE HAD MY 2010 MAZDA 3S SINCE JUNE OF 2010 WHEN I BOUGHT IT NEW. I DRIVE TO AND FROM WORK EVERY DAY. I HAVE 26,000 MILES ON IT, 75% OF WHICH ARE HIGHWAY MILES. I WAS DRIVING TO WORK LAST WEEK, AND NOTICED SOMETHING WITH THE CAR FELT OFF. EVERY DAY OF THE WEEK IT GOT WORSE AND WORSE, SO I FINALLY BROUGHT IT TO MY MECHANIC WHO TOLD ME, AS I SUSPECTED, THAT |

| | | THE CLUTCH WAS SLIPPING AND NEARING THE END OF ITS LIFE. I HAVE YET TO REPLACE THE BRAKE PADS ON THIS CAR, AND TO GET TOLD THAT THE CLUTCH IS GONE BEFORE I EVEN REPLACE NORMAL MAINTENANCE ITEMS IS JUST FLAT OUT UNACCEPTABLE. I HAVE HAD TWO PREVIOUS CARS WITH MANUAL TRANSMISSIONS, AND NEVER REPLACED A CLUTCH, EVEN WHEN THEY HAD CLOSE TO 100,000 MILES ON THEM. MY MECHANIC SUGGESTED BEFORE I DO ANYTHING, TO LOOK ON FORUMS AND SEE IF ANYONE ELSE HAS BEEN HAVING SIMILAR PROBLEMS WITH PREMATURE CLUTCH WEAR. I HAVE SPENT MY WHOLE WEEKEND ON MAZDA AND EDMUNDS FORUMS READING ABOUT COUNTLESS PEOPLE WITH MY MODEL YEAR, 2010, WHO HAVE HAD CLUTCHES GO BEFORE 35,000 MILES. THIS IS NOT A ONE-OFF CASE, AND IT IS CERTAINLY NOT A "WEAR AND TEAR" ISSUE AS THE DEALERSHIP SAYS IT IS. THAT'S THEIR BLANKET COVER-THEIR-[XXX]STATEMENT BECAUSE THEY KNOW THEY PUT OUT A POOR PRODUCT AND DON'T WANT TO DEAL WITH THE COSTS INCURRED WITH REPLACING THEM. I HAVE NO FAITH ANYMORE IN MY LOCAL DEALERSHIP, OR MAZDA AS A BRAND AT THIS POINT. WITH THE SIGNIFICANT NUMBER OF SIMILAR ISSUES TO MINE, THE FACT THAT THEY ARE STILL UNWILLING TO ADMIT THAT THEY CHOSE AN INFERIOR SUPPLIER TO CUT COSTS FOR ONE OF THE MOST CRUCIAL PARTS OF THE CAR, THAT ISN'T COVERED UNDER WARRANTY, IS JUST PISS POOR BUSINESS PRACTICE. I DON'T KNOW WHAT WRITING THIS WILL DO, IF ANYTHING, BUT I DECIDED THAT I AM DONE BEING [XXX] AROUND BY THE DEALER AND HOPEFULLY THIS IS FOLLOWED BY OTHER MAZDA OWNERS WHO SHARE THE DISTASTE FOR THEIR PRODUCT AND SERVICE AS I DO. |
| 2010 | 12/24/2011 | AT LESS THAN 24,000 MILES, MY CLUTCH HAS BEGUN TO SLIP TERRIBLY AND CREATES A TERRIBLE BURNING SMELL. I KNOW THERE ARE HUNDREDS OF OTHER MAZDA OWNERS WHO HAVE ALSO HAD TO REPLACE THEIR CLUTCHES BEFORE THEY'VE HAD TO REPLACE BRAKE PADS. THIS IS A DRAIN ON CONSUMERS, AND A SAFETY ISSUE TO BOOT. |
| 2010 | 12/13/2011 | I PURCHASED A 2010 MAZDA 3 AS A DEMO ON JULY 30, 2011 WITH 4100 MILES ON IT. I NOW HAVE 8500 MILES ON IT AND THE CLUTCH HAS FAILED. AFTER TAKING IT TO THE LOCAL MAZDA DEALERSHIP, I WAS TOLD IT WAS A NORMAL WEAR PRODUCE AND IT HAD BEEN ABUSED SO I HAD TO PAY FOR THE REPAIR. WHEN I BOUGHT THE CAR IT HAD A HIGH RELEASE IN THE CLUTCH PEDAL BUT I FIGURED IT WAS NORMAL FOR THE CAR. SINCE EARLY NOVEMBER, THE |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| | | |
|---|---|---|
| | | "INTAKE MANIFOLD RUNNER" HAS BEEN EXTREMELY SENSITIVE TO THE POINT THAT I CANNOT MAINTAIN SPEED UP A SLIGHT INCLINE WITHOUT THE ENGINE REVVING UP. I WAS TOLD WHEN I TOOK THE CAR TO THE DEALERSHIP THIS WAS DUE TO A CLUTCH FAILURE. I DON'T BELIEVE IT IS ACCEPTABLE FOR A CLUTCH TO GO OUT AFTER JUST 8500 MILES OF DRIVING. MY PREVIOUS VEHICLE WENT OVER 100,000 MILES OF MY SAME DRIVING AND MANUAL TRANSMISSION WITHOUT ANY CLUTCH ISSUES. I AM NOT HAPPY WITH MAZDA, MAZDA PARTS, AND MAZDA'S CUSTOMER ASSISTANCE ON THIS ISSUE. |
| 2010 | 07/10/2011 | CLUTCH FAILED AT 19.5K MILES. IVE ONLY HAD HER SINCE NOVEMBER, AND WITH THE WAY I DRIVE THERES NO WAY IN HELL THE CLUTCH SHOULD GO OUT THIS SOON... NOW AS TO EXPLAIN AS TO WHAT HAPPENED, I WAS DRIVING ON THE HIGHWAY WHEN MY ENGINE STARTED REVING A BIT ODDLY WHEN I BARELY PRESSED ON THE GAS PEDAL. IT WENT FROM THE NORMAL 2900 RPM IN 6TH GEAR AT ABOUT 65 MPH AND SHOT UP TO 3500 WAY TO QUICKLY THEN DROPPED BACK TO 2900 AND SLOWLY ROSE HOW IT SHOULDVE TO GET ME TO 70MPH...IT CONTINUED DOING THIS WHEN I GOT OFF THE HIGHWAY FOR ABOUT 15 MINUTES, GROWING STEADILY WORSE UNTIL I WAS UNABLE TO GET INTO ANY GEAR AT ALL. THERE WAS NEVER A SMELL OF CLUTCH INSIDE THE CAR THE ENTIRE TIME, NO ODD NOISES, NO GRINDING, AND THE CLUTCH WAS ABOUT HALF AS STIFF AS IT NORMALLY WAS. SO I CALLED DEALER, THEY TOWED MY CAR(COURSE IT TOOK FOREVER BECAUSE THEY SENT THE TRUCK TO THE WRONG LOCATION HAHA). IT TOOK 2 DAYS BEFORE THEY EVEN GOT TO GLANCE AT THE CAR TO SEE WHAT NEEDED TO BE DONE(NOT TAKE APART MIND U, JUST LOOKED), AND SAID THE CLUTCH WAS "SMOKED" NO OTHER SPECIFICS BUT WANTED ME TO AUTHORIZE THEM FOR 525 WORTH OF LABOR PLUS PARTS -_-. SO NOW IM STUCK FIGHTING THEM TO REPAIR THIS UNDER WARRANTY(I KNOW THERES USUALLY NOT A WARRANTY UNLESS MANUFACTURERS DEFECT..BUT THIS IS DEFINITELY DEFECTIVE) |
| 2010 | 01/03/2011 | I HAVE A 2010 MAZDA 3 SPOR WITH 41,000 MILES AND THE CLUTCH TOTALLY WENT. CLUTCH , FLYWHEEL HAD TO BE REPLACED FOR $1800 DOLLARS. MAZDA REFUSED TO ADMIT ANY DEFECT |
| 2010 | 12/16/2010 | I PURCHASED MY 2010 MAZDA 3 IN AUGUST 2009. IN DECEMBER 2010, I WAS DRIVING HOME FROM WORK AND STOPPED AT A RED LIGHT. WHEN THE LIGHT TURNED GREEN, I ENGAGED THE CLUTCH AND I FELT A POP UNDER |

| | | |
|---|---|---|
| | | MY FOOT AND THE CLUTCH BECAME STUCK. WHEN IT FINALLY CAME BACK UP IT VIBRATED AND JERKED ITSELF BEFORE GOING BACK TO STARTING POSITION. I PUT THE CAR IN FIRST GEAR AND ATTEMPTED TO ACCELERATE. THE CAR ACCELERATED BUT THE VEHICLE DID NOT MOVE. TO SEE IF THE CLUTCH WAS CATCHING, I PUT THE CAR IN FIRST GEAR AND TOOK MY FOOT OFF THE CLUTCH WITHOUT GIVING IT GAS. THE CAR DID NOT TURN OFF AS IT NORMALLY WOULD IF I DID NOT GIVE IT GAS WHILE IN FIRST GEAR. THE CLUTCH FAILED WITHOUT WARNING AT 20,100 MILES. THE VEHICLE WAS TOWED TO AN AUTHORIZED DEALER AND I WAS ADVISED THAT THE ENTIRE CLUTCH NEEDED TO BE REPLACED AND I MIGHT HAVE TO REPLACE THE FLYWHEEL. I WAS ADVISED THE CLUTCH WAS CONSIDERED A WEAR ITEM AND COULD NOT BE REPLACED UNDER WARRANTY. HOWEVER, DUE TO THE SUDDEN AND PREMATURE NATURE OF THE FAILURE, I AM SPEAKING WITH MAZDA IN AN ATTEMPT TO HAVE THE VEHICLE FIXED UNDER WARRANTY. |
| 2010 | 10/30/2010 | THE CONTACT OWNS A 2010 MAZDA MAZDA3. WHILE DRIVING APPROXIMATELY 60 MPH, THE CONTACT ENGAGED THE CLUTCH AND FELT AN UNUSUAL POP UNDER HER FOOT. SHE STATED THAT THE VEHICLE EXHIBITED AN ABNORMAL INCREASE IN ENGINE RPMS AS IF SHE WERE ATTEMPTING TO DRIVE WHILE IN NEUTRAL. THE VEHICLE WAS TOWED TO AN AUTHORIZED DEALER WHERE THE DEALER ADVISED HER THAT THE ENTIRE CLUTCH WOULD NEED REPLACING. THE VEHICLE WAS REPAIRED. SHE THEN CONTACTED THE MANUFACTURER AND WAS ADVISED THAT THE CLUTCH WAS NOT UNDER WARRANTY AND WOULD PROVIDE NO FURTHER ASSISTANCE. THE VEHICLE WAS NOT UNDER RECALL. THE FAILURE MILEAGE WAS 33,000 AND THE CURRENT MILEAGE WAS 35,000. |
| 2011 | 10/15/2010 | 2011 MAZDA SPEED3. NEW OFF THE LOT AND CLUTCH FAILS IN 30 MILES...SAME DAY! AFTER "REPAIR", CLUTCH AGAIN FAILS NEXT DAY, ~120 MILES. 2 CLUTCH FAILURES IN 2 DAYS OF USE, ~150 MILES. FAILED WHILE DRIVING. DEALER/MAZDA CLAIM "WEAR" ITEM...OUR FAULT! FIGHTING VIA LEMON LAW AND MECHANTABILITY. |
| 2011 | 01/29/2014 | SUDDEN CLUTCH FAILURE. |
| 2011 | 11/25/2013 | PREMATURE CLUTCH FAILURE. MAZDA3 WITH MANUAL TRANSMISSION. CLUTCH SUDDENLY BURN OUT AND CANNOT SHIFT GEAR WHILE DRIVING. HEARD SOMETHING WAS FALLING DOWN UNDER THE CLUTCH AND THEN SMELL SMOKY ODOR. CAR DEAD IN MIDDLE OF LOCAL ROAD. ONLY HAVE 16,XXX MILES AND 2.5 YEARS ON THIS |

-34-

| | | |
|---|---|---|
| | | CAR. CONTACT THE MAZDA EXPERIENCE CENTER, BUT THEY THINK IT IS A NORMAL WORN OUT PART AND WARRANTY WOULD NOT TAKE CARE OF IT. HOWEVER, I THINK THERE IS POSSIBLE A DESIGN DEFECT IN THEIR CLUTCH. |
| 2011 | 07/13/2013 | I FIRST TOOK MY CAR IN TO THE DEALER WHEN I NOTICED THE CLUTCH SLIPPING AFTER I SHIFTED OR WHEN I ACCELERATED AT FREEWAY SPEEDS. NOW, AFTER 16 DAYS, I FINALLY HAVE MY 2011 MAZDA 3 BACK WITH A COMPLETELY NEW CLUTCH ASSEMBLY. MAZDA PAID 50%, NOT INCLUDING THE RENTAL CAR. MY FINAL BILL: $700 (NOT INCLUDING THE RENTAL CAR COST FOR THIS TIME). THEY REPLACED NOT ONLY THE CLUTCH DISC, BUT THE FLYWHEEL AND ASSOCIATED BEARINGS AND PARTS. APPARENTLY THEY CONSIDER REPLACING THE CLUTCH AT 2 YEARS / 20K MILES TO BE "NORMAL WEAR AND TEAR" AND NOT UNDER WARRANTY. IN MY OPINION, THE FACT THAT IT WORE OUT SO QUICKLY, IN ITSELF, MEANS IT WAS DEFECTIVE. I HAVE DRIVEN A MANUAL CAR FOR ALMOST 10 YEARS (PREVIOUSLY A MAZDA RX-7) WITHOUT ANY ISSUES. I DO NOT ABUSE MY CAR, I DO NOT RIDE THE CLUTCH, AND I DO NOT LET ANYONE ELSE DRIVE THE CAR. MAZDA WOULD NOT ALLOW ME TO SPEAK TO ANYONE WITH THE AUTHORITY TO ASSIST ME, SPECIFICALLY THE DISTRICT MANAGER WHO MADE THE DECISION. ON TOP OF THAT, THE WOMAN I SPOKE WITH WHEN I CALLED THEIR CUSTOMER SERVICE LINE AT (800) 222-5500 WAS NOT ONLY UNHELPFUL, BUT FLAT OUT RUDE AND CONFRONTATIONAL. AFTER THIS EXPERIENCE, I PLAN TO TRADE THIS CAR DUE TO THE FACT THAT IT WILL NEED ANOTHER NEW CLUTCH AT 40K MILES OF NORMAL DRIVING. MAZDA HAS LOST A LOYAL CUSTOMER FOR LIFE WITH THEIR "GUILTY UNTIL PROVEN INNOCENT" MENTALITY TOWARD WARRANTY CLAIMS |
| 2011 | 05/11/2012 | THE CONTACT OWNS A 2011 MAZDA MAZDA3. WHILE DRIVING APPROXIMATELY 10 MPH THE RPMS INCREASED AND THE VEHICLE BEGAN TO HESITATE WHILE ACCELERATING. THE VEHICLE WAS TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING. THE TECHNICIAN STATED THE FAILURE OCCURRED DUE TO DRIVER ERROR. THE TECHNICIAN STATED THE FLY WHEEL, CLUTCH, PRESSURE PLATE, AND THE TRANSMISSION HAD TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 16,000. |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| 2011 | 03/26/2011 | ON FRIDAY MY WIFE WAS DRIVING MY CAR (SHE LEARNED HOW TO DRIVE ON A MANUAL AND HAS NO PROBLEMS DRIVING IT) ON A BACK COUNTRY 2 LANE ROAD WITH OUR SON IN THE BACK AND OUT OF CELL PHONE COVERAGE. SHE WAS DRIVING ALONG AT 60 MPH, IN 6TH GEAR WHEN THE RPS STARTED TO BOUNCE OFF THE REV LIMITER. SHE CHECKED TO MAKE SURE SHE WAS STILL IN GEAR. SHE TOOK IT OUT OF 6TH AND PUT IT INTO NEUTRAL THEN TRIED TO GO BACK INTO GEAR. NO DICE, IT WOULDN'T SHIFT. SO SHE PULLED OVER AND SHUT IT DOWN. SHE TIRED TO START AGAIN, TRIED TO GET IT INTO FIRST, NOPE, TRIED TO GET IT INTO SECOND, AND NOTHING. AMAZINGLY SHE GOT SOME SIGNAL ON THE PHONE AFTER A PANICKED 20 MINUTES AND GOT ROADSIDE ASSISTANCE OUT TO TOW HER IN. NOW MAZDA IS SAYING THAT THE CLUTCH IS BURNED UP AND THAT IT IS NOT A DEFECT SO IT IS OUR FAULT AND IT WON'T BE COVERED UNDER WARRANTY. |
| 2012 | 05/17/2014 | VEHICLE WAS PURCHASED BRAND NEW FROM CLASSIC MAZDA OR ORLANDO, FLORIDA IN DECEMBER OF 2012. ALL VEHICLE MAINTENANCE HAS BEEN PERFORMED ACCORDING TO DEALERSHIP RECOMMENDATIONS AT CLASSIC MAZDA OF ORLANDO, FLORIDA. VEHICLE WAS IN FOR SERVICE WITHIN THE PREVIOUS TWO DAYS AND HAD BEEN DRIVING NORMALLY WITH NO PROBLEMS NOTED AFTER INSPECTION. ON SATURDAY MORNING, MAY 17, 2014, VEHICLE WAS DRIVEN AND NOTED NO PROBLEMS. AFTER BEING PARKED FOR A FEW HOURS, VEHICLE WAS STARTED, AND IT ROLLED DOWN THE DRIVEWAY, ONLY TO BE STUCK AND UNABLE TO MOVE WHEN IN GEAR AND RELEASING THE CLUTCH. I CALLED MAZDA ROADSIDE ASSISTANCE WHO TOWED IT TO CLASSIC MAZDA ON 5/18/14. ON 5/19/14, MAZDA FOUND THAT THE CLUTCH HAD BEEN TOTALLY DESTROYED, AND WITH ONLY 17000 MILES ON VEHICLE. MAZDA IS ONLY WILLING TO PAY FOR PARTS AND LEAVE THE BIGGER EXPENSE OF LABOR TO THE OWNER OF APPROXIMATELY $600. THIS CLUTCH SHOULD LAST LONGER THAN 17000 MILES AND I BELIEVE IT TO BE DEFECTIVE AS THERE ARE MANY OTHER COMPLAINTS SIMILAR TO MINE EVERYWHERE. I BELIEVE MAZDA HAS DESIGNED A LESS THAN ACCEPTABLE CLUTCH TO BE IN USE ON THESE VEHICLES, AND SHOULD BE 100% LIABLE FOR REPAIR COSTS. I REQUEST A FORMAL INVESTIGATION INTO THIS CONCERN AS IT COULD CAUSE SERIOUS INJURY IF AT HIGHWAY SPEEDS WHEN FAULT OCCURS. |
| 2012 | 01/18/2014 | WHILE DRIVING ON FOUR LANE HIGHWAY, CAR SLOWED AND FAILED TO RESPOND TO GAS PEDAL. COULD NOT |

| | | |
|---|---|---|
| | | SHIFT GEARS IN MANUAL TRANSMISSION. PULLED TO SIDE OF ROADWAY AND CALLED FOR TOW TO DEALER. DEALER FOUND FRONT SURFACE OF CLUTCH DISK TO BE COMPLETELY WORN AWAY, THUS ALLOWING CLUTCH TO SLIP. DANGER WAS INABILITY TO MAINTAIN FLOW WITH HEAVY TRAFFIC. DUE TO LOW MILEAGE, SUSPECT DEFECT IN PARTS OR ASSEMBLY. |
| 2012 | 08/07/2012 | APPROXIMATELY TWO OR THREE TIMES A WEEK WHEN DOWNSHIFTING OUT OF A RIGHT OR LEFT HAND CURVE OR TURN, MY 2012 MANUAL TRANSMISSION MAZDA 3 HATCHBACK WILL ACCELERATE ON ITS OWN. THIS IS CHARACTERIZED BY A VARYING INCREASE OF RPMS: 2100 RPMS TO 4500 RPMS, DEPENDING ON THE INCIDENT, AND A SUDDEN LURCHING OR SURGING FORWARD OF THE VEHICLE ITSELF. WHEN APPROACHING CURVES OR TURNS, AT 30 OR 40 MPH, THAT DO NOT HAVE TO BE TAKEN AT A COMPLETE STOP, I ENGAGE THE CLUTCH, APPLY THE BRAKES, AND SLOW THE VEHICLE TO 15-20 MPH. UPON COMING OUT OF THE TURN I SHIFT THE VEHICLE INTO SECOND GEAR. WHEN I SLOWLY RELEASE THE CLUTCH, WITHOUT DEPRESSING THE GAS PEDAL AT ALL, THE CAR'S ENGINE WILL REV, RPMS WILL SURGE TO AS HIGH AS 4000 - 4500, AND THE CAR WILL LURCH FORWARD UNTIL THE CLUTCH IS ONCE AGAIN DEPRESSED. THESE INCIDENTS ARE RANDOM AND ARE NOT DEPENDENT ON SPEED, WEATHER CONDITIONS, OR LOCATION. THESE INCIDENTS HAVE ONLY BEEN DUPLICATED WITH A MINIMAL INCREASE OF RPMS AND NO LURCHING FORWARD WHEN A MECHANIC IS PRESENT. THESE INCIDENTS CAN NOT BE DUPLICATED FOR THE DEALERSHIP AT THEIR FULLEST AND MOST DANGEROUS. |
| 2012 | 12/08/2012 | WHEN DOWNSHIFTING (MANUAL TRANSMISSION) FROM 3RD TO 2ND AS I WAS SLOWING DOWN BECAUSE OF A RED LIGHT, THE ENGINE RPM WENT WAY UP, MAYBE AROUND 4,000 RPM. I PRESSED THE CLUTCH TO AVOID THE CAR JERKING FORWARD AND HITTING THE CAR IN FRONT OF ME. THIS WAS THE THIRD TIME THIS ACTUALLY HAPPENED. I BOUGHT THE CAR NEW AND HAVE ONLY OWNED IT 5 MONTHS. |
| 2013 | 09/10/2013 | MY NEW 2013 MAZDA3 WITH ONLY 3660 MILES FAILED ON A BUSY HIGHWAY. FIRST, THE ENGINE MADE A LOUD NOISE EVERY TIME I SHIFTED GEARS (MANUAL SHIFT.) THEN, I COULD NOT CHANGE GEARS AT ALL, AND THE ENGINE FAILED----I JUST BARELY GOT IT TO THE SHOULDER BEFORE IT QUIT ENTIRELY. THE DEALER SAYS THE CLUTCH |

| Model Year | Complaint Date | Comments |
|---|---|---|
| | | NEEDS TO BE REPLACED. I'VE HAD THE CAR LESS THAN 6 MONTHS. |
| 2014 | 10/07/2014 | I INITIALLY HAD ISSUE GETTING INTO AND OUT OF THE 3RD AND 4TH GEAR (MANUAL TRANSMISSION CAR). I COULD FEEL GEARS GRINDING DURING SHIFTING (WITH THE CLUTCH FULLY DEPRESSED). THE DEALER REPLACED THE THIRD GEAR. AFTER THE FIX, THE CAR NOW HAS DIFFICULTY GETTING INTO AND OUT OF GEAR 2 AND 3. THIS PROBLEM IS INTERMITTENT BUT IS MORE NOTICEABLE AFTER THE INITIAL START-UP OF THE CAR, ESPECIALLY IF THE WEATHER IS COLD (50F OR COLDER). WITH THE CLUTCH FULLY PRESSED, I CAN STILL FEEL THE GEAR ROTATING AND GRINDING DURING SHIFTING. WHEN THE CAR IS COLD, A LOT OF FORCE IS NEEDED TO SHIFT THE CAR INTO 2ND AND 3RD GEAR. THE SHIFTING ISSUE IS LESS NOTICEABLE WHEN ONCE THE CAR HAS BEEN OPERATING FOR 20MINS. |
| | | |

### iii.   Customer Complaints

118.   In addition to complaints made directly to Mazda by customers who tendered their vehicles to Mazda and its agents for repair, such as Plaintiffs and many of the complainants referenced above, Mazda routinely monitors the internet for complaints similar in substance to those quoted below. Upon information and belief, Mazda's Customer Experience Center carries out this function and regularly receives and responds to customer calls concerning, *inter alia*, product defects.  Through these sources, Mazda was made aware of the Defect.  The complaints, some of which are includedbelow, also indicate Mazda's awareness of the defect and its potential danger.

| Model Year | Complaint Date | Comments |
|---|---|---|
| 2009 | 7/26/2014 | At just 56,000 miles, my clutch is totally slipping. My local Mazda dealership verified that in fact the clutch was failing and needed to be replaced. The service manager told me that several additional clutch parts should be replaced because Mazda has updated those parts with new part numbers, even though there was no formal recall or warranty extension!! So now, the estimate stands at nearly $1,200, just five years after buying the car. Ridiculous. |
| 2009 | 12/06/2011 | I've been driving for the last 40 years and have never had such an experience. The manufacturer knew of the problem with the clutch. Then why put such a car on the market. The manufacturer should call back all Mazda 3 and compensate the owners. To hell with Mazda 3! |

-38-

| 2010 | 02/02/2015 | Bought in Dec, 2010 from Car$ense. Previous owner purchased the car in April, 2009 from dealer. It had 17300 miles when I bought it. No issues other than tires (I've had to replace all FOUR tires TWICE because the sensor blows the tire) and brakes - typical stuff - until January, 2014 when I heard a strange high pitched sound coming from the engine. Right side, near the front but not the radiator. Fast forward to inspection in August when I mentioned the noise. HEFTY $ to replace the drive train. Right away the clutch started to act sluggish. I thought it was me getting old and not realizing my foot was on the clutch. The last week of January, 2015 saw acceleration failures - like I was trying to accelerate while in neutral but only in gear 4, 5 and 6. Gears 1-3 were fine. Back to the repair shop (not dealer and certainly NOT Car$ense) to be without my car for EIGHT days and have to get a rental for the week. $1490 for the clutch - would have been cheaper if Mazda didn't change the design - another Mazda3 (2008) was in at the same time for the SAME issue but was $800 less because they could rebuild the clutch. Another $399 for the rental!!! |
| 2010 | 07/10/2014 | My clutch has to be replaced at under $35K. That's absurd, My previous car had just under 80K miles on it and the clutch was nowhere near being ready to be replaced. I have otherwise been pleased with my Mazda, but will not be purchasing another one. The clutch should last way more than 35K miles. Yes, the next car I am going to buy will be an automatic, but it will not be the new Mazda 5 I was going to buy. |
| 2010 | 02/15/2014 | New Clutch at 35,000 miles? REALLY? I still have the original Tires and Brakes. Clutch before Brakes? REALLY? I've driven manual transmission cars for 30 years, two with over 100,000 miles, and I have NEVER had to replace a clutch. 2004 Mazda3, first model year, 100,000+ miles Original clutch. 3 year old 2010 Mazda3, 35000 miles New Clutch? DEAR MAZDA - TIME FOR A RECALL!!! I want my $1000 back. I want you (MAZDA) to admit there is an issue. I feel cheated by my loyalty to your brand. I had just seen the propaganda for the 2014 Mazda3, all the things I want are on that car. But if I have to spend $20,000 for a car, I don't want to worry about when This Clutch will FAIL. I am so Disappointed! |
| 2010 | 03/28/2013 | Clutch Failed out of nowhere. Did not drive the car abnormally hard. Apparently this is an ongoing problem with this make and model.. VERY upset about this purchase now since it may cost $1300 out of pocket. |
| 2010 | 10/06/2011 | So, I bought this car brand new with 4.7miles on the clock. It is a 2010 Mazda 3 s Sport Hatchback 2.5l 6-speed manual. I drove a vw Jetta 50k miles, and it was a manual as well before this car. At 8000 miles, the clutch and transmission went out (3rd gear exploded, and clutch was slipping). Then after a total of 16000 miles on the clock, the clutch failed once again, and this time it cost me $1756.82 to have it fixed, plus I did not have a car for 2 weeks. Now, with 20600 miles on the clock, the clutch is slipping once again! |

-39-

| | | |
|---|---|---|
| | | The car is great to drive, but the clutch really is sh*t in these things! If Mazda don't see this as a varifyable statement, they are more than welcome to shoot me an email or a phone call asking for the vin#! |
| 2010 | 11/09/2011 | I, as well, had to have my clutch replaced on my 2010 Mazda3 HB. I was going to Syracuse, everything was fine on the way up, and on my way home, halfway back... Gone. Just, nothing. No Acceleration, nothing. Mazda said clutch and flywheel needed to be replaced. I took the clutch to the dealership I bought it from, and they said the clutch was bad. I called Corporate, and got the royal screw job with no reach around. I started searching around online... I found a lot of people in a few forums that had to replace their clutches as well. I am now questioning my car buying choice, wondering if this is going to be a yearly thing or not. I've actually already started looking around for if I have to choose to fix it again or not.... I won't. I'll just buy an Infinity or a Nissan, because this is bullshit and I am still pissed off that Mazda bailed on so many people with the same issue.<br>Age: 1 year and 3 months<br>Miles: ~27100 almost all done highway to and from Rochester<br>Update from Feb 15, 2012<br>After replacing my clutch, it seems like it might be failing again. There is a distinct burning smell here and there after driving a long distance. I am only at around 32000 miles now, just under 5000 miles from when I replaced it. I've heard a lot of good about the Speed 3 and no bad regarding clutch failures... however, I think I might go to Infiniti, because this is ridiculous. They need to recall the clutches, or something, because there is indeed a problem. I would like to hear Mazda tell 15 people they don't know how to drive a manual transmission. |
| 2010 | 12/13/2011 | I bought this car as a demo with 4500 miles on it at the beginning of August. Have owned it for 4.5 months and put 4100 miles on it and the clutch failed completely. Because the car was a demo, the warranty had expired but wouldn't have made a difference because it was 'abused.' I discussed the issue with Mazda Knoxville's Service Manager Derek and he said it was a normal wear item and that Mazda would only cover it if there was a default in the clutch or one of the clutch components. After a long conversation with Mazda's District Parts and Service Manager Mark, I was left with a $1200 bill. I was told that there was no way to determine if it was my driving or someone previous. My first car had a manual transmission that lasted over 100,000 miles when I was a teenager...hardly doubt that I would burn out a new car clutch after 4000 miles. |
| 2010 | 07/01/2010 | I have a 2010 Mazda 3 S. Love the car don't get me wrong, but I noticed when I shift from first to second gear (not all the time) the gears grinded, clutch was all the way in, drove me crazy. Took to the dealership they couldn't find the problem. Went to the dealership six more times with the same issue. After the six time i went to the |

| | | dealership my front right end was making this clunking sound. Took it to the dealership about five times before they figured out it was the strut and top mount. Soon after it was making this clunking sound again, 3 times at the dealer ship it was the left strut. Right after that (still having clutch problems) i take it into the dealership again because the engine was making a weird grinding sound, turns out it needed engine mounts. A couple of days ago i was driving and noticed it was hard to put the stick shift into gears, was intermediate for a couple of minutes. Then i turn the corner onto a street and i could not find a gear, i was stuck in neutral. After jamming it into any gear I got third. Pulled up to a friends house and called the dealership... when the tow truck arrived i had reverse and first gear, so i moved it up to the tow truck and it happened again. Later that day the dealership called me and informed me that they did not a problem at all. Now after going more than thirty times to the dealership I am contacting a lawyer, under warranty they will not fix the clutch. (not once they allowed me to get me a rental car for all my issues) I really do like the 3 models because my aunt has a 2007 (no problems) but this is the worst buying decision. |
|------|------------|------|
| 2010 | 11/17/2011 | I purchased a new Mazda and experienced a catastrophic clutch failure at less than 32,000 miles. That means, the car was being driven down the interstate and while coasting down the exit ramp there was a bang and the car would no longer move. I had it towed to the closest Mazda dealership who told me it was going to cost $1200 to have it repaired. This is unacceptable. I have owned many cars from many manufacturers and have never experienced this problem before, even with cars with hundreds of thousands of miles. In fact this is my newest current car and the only one in my lifetime I have ever had to have towed. I am very disappointed in Mazda and would not consider another new one in light of this obvious quality problem. Why would anyone buy a new car and want to be treated as if they bought a used one?<br>The complaint to Mazda North America gave a polite "The clutch is not covered after 12,000 miles.<br>The car was not repaired at the dealership as they were absolutely no help. It was worth the extra $80 to tow it away to a shop I could trust. |
| 2010 | 02/18/2015 | To have the clutch die at less than 70,000 miles: Well, that just sucks! And it appears that MANY of us are reporting that same problem!<br>Update from Mar 7, 2015<br>Repaired, bill was just over $1,400. Took the bill to the Mazda dealership from which I bought the car. Sales manager was nice enough, but told me that he would have to forward my info to the manager in charge of the repair dept., who would not be in until Monday. He made a photocopy of my bill. If the dealership cannot do anything, I will next go to Mazda corporate... |
| 2010 | 01/09/2015 | Just got this fine car 4 months ago. As soon as it began to snow, and the wheels began to lose their grip a bit, I began to smell an awful burning |

| | | |
|---|---|---|
| | | odor that permeated the entirety of the vehicle, from front to trunk. I thought I ran over something, or sucked something up, or perhaps got something caught in the calipers. NO...I found out today that the car, I have made only 4 payments on, is going to need a new clutch at 61000 miles. I haven't gotten the estimate yet, but my wife works at the dealership I got it at, so I get at discount on labor. I too have been told it's a 'wear item', and it isn't covered under warranty or service contract..Wheee. |
| 2010 | 09/26/2014 | I bought my Mazda 3 manual shift in 2010, brand new straight from Mazda dealer in Whitby. In 2011 car had 8000km, I started to smell a strange odor inside the car so I went to the dealer in Ajax to check it out - they said everything is OK. I don't think they checked anything besides oil levels. Now in Sept.2014 the mileage is 40.000km and once again I brought my car to the dealer because driving my car became a big challenge, as well as dangerous. When I accelerate RPMs go up but vehicle will not accelerate and the car would go slowly as if in slow motion. The issue they found was that the clutch was worn out and they recommend replacing the clutch and machine flywheel-cost $1365.00 + TX. I have been driving the manual shift cars for 40 years and I haven't had any problems with the clutch. The last 25 years we had three Honda's and four Toyota's and never ever had clutch problems, even with 450.000km mileage on one of my Honda's. I have talked with very experienced mechanics about it, they couldn't believe that it happened and they said that must be manufacture defect. I contacted the Mazda Dealer and I have been told to contact the Customer Relations Department for further assistance. In summary; I had to replace the clutch paying 1600$CAN from my pocket. I was told that so called bumper to bumper warranty did not cover it due to wear and tear!!!!! Sign me up for a Class Action Suit. Very unhappy, first and last time Mazda owner. |
| 2010 | 07/02/2014 | Same issue as has been reported multiple times. The clutch disc was replaced by the previous owner at 11k miles. Multiple parts needed to be replaced at 32,500 including fork, bearing, pin, clutch disc, and clutch plate. Flywheel was fairly damaged as well. What's worse is that the original clutch plate had a clear defect (a welded bolt on the retaining ring of clutch disc literally fell out of the car when the assembly was removed. The mechanic during the second repair said this should never happen, even given the 'wear and tear' pushback that the manufacturer gives the customers. Other parts were in horrible shape despite the car's mileage and age, likely due to the installation and their poor quality (all OEM). Also, the mechanic during the second repair noted the part numbers have changed for several components of the clutch assembly. While there was never a formal recall, Mazda clearly has seen the issue quite a bit as they've updated the parts to correct and conceal the problem. Horrendous support from Mazda corporate via the |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| | | |
|---|---|---|
| | | phone line, especially given that all previous repairs and maintenance for the car have been done at Mazda dealerships, and all maintenance/repairs have used OEM-recommended parts. No support or offer to cover parts or labor even with parts literally falling apart after only 33k miles and 2 clutch repairs. I plan to sell car and won't buy Mazda again. |
| 2010 | 06/04/2014 | Clutch gave up at 73000 miles. Cost me way too much money and was not covered by warranty. Horrible how can the clutch give up SOON!!!!!! |
| 2010 | 04/01/2014 | Clutch going bad at 35000 miles - VERY VERY VERY VERY VERY VERY VERY VERY VERY VERY VERY VERY VERY VERY VERY VERY BAD!!!! |
| 2010 | 02/15/2014 | I've been driving manual cars for over a decade. Nothing fancy, just standard 5 speeds, but one would think experience would come with age and the common sense of buying ones first car. This was going to be my first venture on my own in the world of car loans with my name attached. The world of good credit and bad credit watches carefully my every move and I carefully baby and maintain the first true "my" car, though used when I purchased it with already roughly 25,000 leased miles on it in the very late Nov, very beginning Dec of 2012. So maybe I was in denial of the early warning signs that came once around 32,000 miles and again at 36,000. That, it happened once when I shifted into 4th and the car acted like I had done nothing for excruciating long moments as I watched the rpms continue to go up before finally catching and then falling. I'd get an oil change, thinking it was "cranky", I'd even ask the dealership mechanic about it when I brought it in. They acted like everything should be fine after the oil change. That it was nothing to worry about. Then the cold weather came this winter and things started to change. While not a ton of rpm difference there is this "cushion" that began to form around the 42,000 mile mark and exists now around every gear. Only about 300-500rpms, but enough to watch the needle rise and fall and is worsened when one decides they want to accelerate uphill or at any rate quicker than my Mother would. (Which is how I've been driving the car for the last 18,000-20,000 in an attempt to get the claimed mpg to almost no avail.) So then...why when I could be more accused of dropping the clutch versus riding it does this appear to be the early warning signs of a slipping clutch? And here's another conundrum for you. When I was almost 18 (two and a half months from being 18) my parents purchased in 2004 a used 2003 Toyota matrix manual 5 speed, with 22,000-23,000 miles on it, which basically was to be my car. I was the sole driver with very rare exceptions right from the start and even more so as time passed. I drove that car hard. Quick to start, quick to stop. I loved that car. So why when I was so hard on that car did it's clutch last me (I'm pulling memories versus files right now, I could go find the file and |

| | | update later) I want to say we replaced a part of the clutch, but not even all of it, around the 90,000-100,000 mile mark. (again 18 year old driving the car pretty darn hard and I was probably putting 250-350 miles a week on the car, 80% interstate/highway & 20% city) So apart from pulling an average of always 350-370 miles a week, probably more like 75% interstate/highway & 25% city now, and the difference of the used vehicle having a 5 speed versus a 6 speed and 22,000-23,000 miles versus 25,000 miles on it when I took possession, and my age of being 18 and a hard/aggressive driver to a now babying my first car driver....why am I looking at replacing my clutch in the very near and dear future at probably before reaching 50,000 miles? It's got 47,200 as I write this right now and the problem is definitely worse in the cold than the warm. It's not awful, but to an experienced manual driver, it's not how it's supposed to be. It's "soft", and very tedious. Perhaps that's the best way to describe it as I begin to price shop for auto mechanics, parts and a new car. This is not where I wanted to be after owning if for only a year and three months. I got to be the driver of that wonderful Toyota matrix for nine and half years (I even taught 3-4 other people how to drive a stick shift in it, which is what killed the second clutch all the way, complete replacement had to occur that time). Is there no such thing as quality any more? |
| 2010 | 12/23/2013 | Well it was the day before Christmas Eve and I was headed to spend the holidays with my family in Charlotte NC. Driving on I-77 my clutch disc completely disintegrated, just outta the blue! I though the whole car was done... Well I called my insurance company for road side assistance. They picked me up and took me to the nearest Mazda dealership... The dealership is McDaniels Mazda Columbia Sc. When they got the car they said they would have to run a diagnostic test to see what the problem was. So I had to leave the car with them. My father drove from Charlotte to pick me up and take me back to spend the holidays with my family. So on the day after Christmas I got a call from the dealership and they told me the clutch had to be replaced. Gave me a estimate on the repair and asked what I wanted to do. I said fix it, it was the holidays and this wasn't helping things out. So after having my car for 9 days I found out the car was ready. Picked it up on that Saturday after New Years 2014. When I arrived at the dealership I was told that the man that was handling my situation no longer worked for them??? I asked them why this wasn't covered under the 60k/5y power-train warranty. The guys at the dealership that worked in the service dept. told me they agreed that it should be. Said it was obviously a defective part due to the way it completely disintegrated. Also sense I was under the 60k warranty. They were not able to help much as no one of management was available that day. So I paid and said I would be escalating this on the coming Monday. I called Mazda Support and started a case with a man named Kevin at extension 1146. He told me he would look into the matter and get back |

| | | |
|---|---|---|
| | | to me.... I received a call today from him saying that the service manager Randy said the clutch failed due to wear and tear..... Seriously angry now, your service dept guys told me it was obviously a effective clutch disc. So now I got a man whom was fired whom started my repair. A service dept telling me it should be covered and a service Manager Randy telling me it shouldn't. I've driven Manuel cars for 22 years and never have experienced something like this before in my life! I've never even had to replace a clutch! Then Randy ask me questions why I agreed to the repair..... This guy is a moron as what else can I do. I have to have my car, my holidays are ruined. Waiting to talk again to the Mazda rep Kevin. Looks like I'm gonna try and escalate this to the better business bureau.<br><br>Can't believe I could have several different conflicting stories, my initial repair guy Phil fired. And I'm out a lot of money. This is completely unacceptable. Very unhappy and angry Mazda 3 time owner. This is a item that needs to be recalled or a class action lawsuit should be held. If not, I'm contemplating, if nothing is resolved with the better business bureau, then I may bring a civil law suit against them. Very, very unhappy. |
| 2010 | 09/15/2013 | My son was driving from Indy to Savannah,GA on 9/16-college kid. Between Nashville and Chattanooga started having issues with rpms racing and erratic shifting. By the time he reached Dalton, GA - 11 pm-car had a complete clutch failure. Lucky he was killed on the interstate. Had to get a motel room, have a friend drive 1 1/2 hrs to pick him up on a Sunday, arrange for a 71 mile tow to the nearest Mazda dealer and be told on 9/17 that the clutch was " worn our". $ 1200. Bull! I have been a stick driver since 1971, mostly Nissans, and have NEVER replaced a clutch. I taught him to drive on a 2000 Altima and then 2007 Jetta. He had 5 yrs of manual shift driving before we leased this new Mazda 3 IN 2010. He now has a 300 mile trip to get the car and 300 miles back to school. NOT HAPPY! SIGN ME UP FOR A CLASS ACTION SUIT. |
| 2010 | 04/13/2012 | I purchased this so called pre-owned certified Mazda 3 hatchback for my son on march 9, 2012 and 45 days later on his way to the movies on the freeway the clutch gave out. I was quoted 1,300.00 dollars at the dealership and was told that the so called bumper to bumper warranty did not cover it due to wear and tear. I have owned many standard vehicles from Toyota, VW and even and older model Mazda and have never needed to replace a clutch even with over 100,000 miles on them. What was the point of the certified point check their service department preformed. I told the service Mgr. they must have very low standards when checking off their certification check off list or their mechanic really s**d!!! This problem needs to be taken care of soon..what's taking them so long to recall the clutch??? There is an electrical system recall on this model...log on to www.motortrend.com/cars/2010/mazda/mazda3/recalls/ The recall states...A clearance between the engine harness and the housing starter |

| | | |
|---|---|---|
| | | motor may be insufficient. Due to this, the covering of the harness may be damaged during operation possibly causing a short circuit between certain harness wires and the starter housing. A short circuit can result in engine control malfunction and/or poor shift quality. The main fuse may blow out causing the engine to stall and inability of restart, increasing the risk of a crash. |
| 2010 | 07/13/2013 | "Another one bites the dust" I work from the house, do mainly highway driving and put about 100 miles a week if that on the car right now. Was driving on highway and rpm started to rev up, couldn't switch gears and clutch gave out from underneath me. Luckily was able to roll off the highway when I noticed the problem. Of course one problem leads to another battery then died at the shop had to replace as well, this comes not even a month after the rotors for brakes hit the fan. This has got to be one of the most problematic cars I have seen. A clutch dying less then 3 years and worse part is my car was due off it's lease next month. I assume this to be a manufacture defect, and maybe one day they will admit to a faulty clutch, as suggested by how many complaints about this problem are here. |
| 2010 | 05/12/2013 | I've noticed a few people having the same problem as me, premature clutch failure on 2010 mazda 3 6 spd. All was well until one day started up the car went to drive and just getting RPMs and no movement with clutch out and in gear. sure enough bring it to the garage - clutch is worn out. Unbelievable, I've had many standard vehicles over the years and never once had a clutch go on a car, let alone a fairly new car with only 70K on it. basic wear and tear not covered under any warranty - ridiculous, i could understand not being covered if it was 5+ years and over 200K or so. disappointed in mazda |
| 2010 | 05/28/2013 | I was heading home for Easter to visit my family. (About 200 miles). About 20 miles into the drive, my engine began revving much higher than usual. About 2 miles later, my car was uncontrollably revving about 5,000 revs per minute and topping about at approximately 62mph. I decided to exit the interstate to the nearest gas station to check the engine. Before I even had the chance to get off at the nearest exit, my clutch completely gave out and I was unable to put in into any gear. All in all, my car gave me about 3 miles to notice a catastrophic clutch failure. I used Mazda help assistance to tow it back home to a Mazda dealership. I was kind of mad at the time but I knew the car was still under warranty. The next morning, I received a phone call that it's a "wear" item and is NOT part of the warranty. Mazda then tried to charge me $1400 to get it fixed. Now I am absolutely furious! I bought this car new for the damn warranty, but when something goes wrong, it's not covered.<br>More to the story. They wanted to charge me $450 for the new clutch plus labor equaling $1400. I asked if they would put the exact same clutch in that just catastrophically failed. Why would I want to pay $450 for the exact part that just failed at 33,000 miles? Are they |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| | | |
|---|---|---|
| | | seriously that dumb? I ended up ordering a higher grade clutch kit on Amazon for more that $150 cheaper than what Mazda was charging. I also towed my car elsewhere to save money on the labor. All in all, I saved about $400 by doing this. It took a little bit more time, but I saved in the end.<br>Thank you Mazda for making me dishing out $1000 of a premature clutch failure without a care in the world and also a big thanks for making me miss a nice Easter weekend with the family. In return, I will steer everyone I can away from your cars due to the lack of goodwill. |
| 2010 | 04/26/2013 | I have driven for 50 years and never had a clutch fail before, even on old cars. The 2010 Mazda which I purchased new, failed twice in 2 years. The dealer was no help. This car is down the road and I will never even look at another Mazda. |
| 2010 | 03/114/2013 | Clutch wore completely through according to the dealer. Car only has 32k miles!. Not covered under warranty!! Mazda says this is normal wear. How can that be? Even the tires are warranted for 50k and they get normal wear even then they are prorated. I had to pick up the entire bill for this. Never again for Mazda for me, new or used. This really needs a class action lawsuit, I have seen tons of these complaints on the web. |
| 2010 | 12/18/2012 | Mazda needs to fix this and apologize to everyone that this has happen to because my car the clutch started to not fully engage so I set an appointment and make it about 10 blocks before having to get it towed, got the call on what the issue seemed to be and had to get the clutch disassembled to know for sure and sure enough it was burnt out which at first I thought it was covered but in the end was not in the end I was with out a car for almost two weeks because this happened right at Christmas Holiday. this seems to be a defect of some kind to have so many people with the same complaint and I have found more on other similar sites. The deal didn't say that it was an known issue but they were really nice about the whole thing and me not wanting to keep my car after, they gave me full value for it including the repair and the one guy I talked to said it is one of those things that is in possible to prove and they won't get paid from Mazda unless Mazda list it as a known issue. I just can't believe this I have had two other cars with more miles both had been used by multiple people some new to driving with a clutch and I didn't even have to get those clutches replaced. in the end I told them I didn't want the car because I don't have to do this again in 25,000mile so got a different car altogether. |
| 2010 | 09/20/2012 | 16K miles on a car I paid cash for new Sept 2009. Warranty expires this week. Out of nowhere, clutch does not engage! I refuse to pay $1100 for a replacement, when this is clearly a manufacturing defect. Looking online, this is the identical problem occurring with all 2010 Mazda3 vehicles, and I refuse to pay for this defect, as it is Mazda's fault and in no way my error. THERE ARE ONLY 16000 MILES ON THE CAR! I drove it to a local dealership on Saturday. They called Monday to say |

| | | the technician could not even test drive the vehicle as the clutch will not engage at all. It worked when I delivered the vehicle on Saturday, so if the clutch can deteriorate while the car sits still in their lot, how can that have anything to do with my driving? This is in no way "normal wear and tear," and Mazda will be paying for this headache. I am appalled. |
|---|---|---|
| 2010 | 08/12/2012 | Clutch failed at 30000 miles - similar experience to others on site. no warning, rpms shoot up between changing gears, lost control on the highway. Very scary experience. |
| 2010 | 08/13/2012 | I bought a new Mazda 3 sedan in May 2010. I've had no problems with the car and just drove it 1500 miles to SC for vacation. However, late last week, just after crossing 38,000 miles, the clutch all of sudden began to slip resulting in the RPMs jumping up to 5k or 6k before the engine would engage and produce power. I wasn't sure if I should stop the car or drive it on home. I decided to drive it home and the clutch slippage quickly worsened. When I got home, the engine had a smell like worn brake pads. I called the dealer today about it to see if repairing the clutch would be covered under warranty. They stated it wasn't likely, but that they could disassemble it first, costing me about $600 just to take it out to diagnose it and that total repair would be about $1200.00. They would then have to take pictures and send to Corporate office to determine if it was normal wear or a manufacturer defect. I asked what they thought was likely from their experience and they said it would probably be considered normal wear and tear. I couldn't see taking it in and paying dealer prices just to tell me its not under warranty. After reading all of the other posts, this certainly is a pattern, not an isolated case of clutch abuse! I've never repaired a clutch this early on my three other mazdas. They all lasted beyond 100k miles before needing repair. I'm not sure what route to go as it seems that the efforts posted by others was extreme and didn't always result in a positive outcome. I only know for certain I will never buy another Mazda again!! |
| 2010 | 08/15/2012 | I was driving home from the grocery store and as I approached a slight incline I accelerated to go up the incline. The engine suddenly revved up past 4000 RPM and it felt like the car had slipped out of gear. It did not slip out of gear. It was obvious that the clutch was slipping. I also noted a hot, burning odor like burning micarta. I managed to get the car home, then called the dealer They said that it sounded like a warranty thing and told me to bring it in. I told them that the car was not operable. They then told me to call Mazda Roadside Assistance, who towed the car to the nearest dealer (not the one I bought the car from). The next morning the dealer called and said that the clutch plate was destroyed and that it would cost me around $1,000.00. I asked about the warranty and was told that the clutch plate is a "normal wear item" like tires or windshield wipers, and was not covered by any warranty. I then got on my computer and discovered that I am not alone with premature clutch failures in the Mazda3. I have owned 5 previous Mazda vehicles |

CLASS ACTION COMPLAINT
CASE NO.: 3:16-CV-02087

| | | |
|---|---|---|
| | | since 1970, all with manual transmissions. 4 of the 5 had over 200,000 miles with no clutch problems. The 5th had around 40,000 miles on it with no problems when I traded it in on my 2010 Mazda3 in June of 2009. l love the Mazda3, but Mazda needs to step up and do the right thing, find and fix the problem, and take care of their customers. I shudder to think what would have happened if this failure had occurred during one of our long road trips, stranded out in the boonies (like Death Valley with no cell coverage).<br><br>Update from Oct 10, 2012<br>After sending the $969.70 to get my car back from the dealer I sent all documentation to Mazda North American Operations for clarification as to why the clutch failure is considered a "normal" wear item even though the clutch presure plate (which was destroyed) is specifically listed in the warranty book as warrantied for 60 mo/60,000 miles. I recently received a telephone call from them stating that the failure is considered normal wear and no assistance could be expected from Mazda. I then requested them to send me a written document stating their reasons for denial of responsibility, and was informed that that was just not going to happen, and that I should get a copy of the work order from the dealer - which I received when I picked up my car, but does not explain anything other than the fact that they replaced the clutch and that I paid the bill. Mazda has just lost a loyal customer of 42 years! |
| 2010 | 12/11/2011 | I bought a CERTIFIED 2010 Mazda GT hatchback with only 5298 miles. However,after only <1800 miles I needed a new clutch . Maple Shade Mazda told me this is a wearable part. I drove my Honda Civic five speed for 73,000 miles and did not have any clutch problems, so it wasn't my driving! My three- year 36,000 bumper-to-bumper warranty did not apply! 900 dollars later this is one VERY unhappy customer!!! |
| 2010 | 05/19/2012 | We've always owned Manual vehicles (1956 to present) The claim that clutch failure was 'driver error' is ludicrous. Failure came without warning, while pulling away from a stop light. Previous Protege 5 manual was still going strong @170,000 km. So 51,058 km (31,875 mi) is premature failure! After repeated attempts to speak to someone of authority at Mazda, finally in late June, Mario, an administrative assistant took up the cause, only to advise @ 3 weeks later, that no warranty or assistance with the repair bill was forthcoming from them. I await a letter confirming their decision. |
| 2010 | 07/01/2012 | Ladies and gents, Refusing to cover our clutch replacements is ethically wrong, and illegal on Mazda's part. I am preparing to file a class action lawsuit to recover as damages (1) the costs of getting our clutches replaced and (2) incidental costs arising from Mazda's refusal to cover our repairs in a timely manner. Please email me with your contact info at ochmanek@gmail.com, with "Mazda Clutch Lawsuit" in the subject line, and I will compile a list of plaintiffs and hire an expert consumer rights attorney to represent us on a contingent fee basis. |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

I am a third year law student at UC Irvine, and took a course that covered the consumer laws governing warranties. At least two sets of laws relate to our current situation: the Magnuson-Moss Federal Warranty Act (15 USC §2301 et seq.), and the state laws providing for an Implied Warranty of Merchantability. Under Magnuson-Moss, any material exclusions to a written warranty must be fully and conspicuously disclosed to the buyer, so as not to mislead the reasonable consumer as to the scope of the warranty. Based on everybody's stories on this forum, Mazda clearly failed this duty. Like many of you have said, had I known that the clutch on the Mazda3 was going to fail after 2 years, costing me $1600 out-of-pocket to replace, I would never have bought it! The Implied Warranty of Merchantability is a part of the Uniform Commercial Code that (to the best of my knowledge) has been adopted by every state except Louisiana. It requires that whenever someone sells goods, if he is a "merchant" with respect to those goods (which Mazda and its dealerships certainly are with respect to cars), those goods must be fit for reasonably expected use. Furthermore, there can be no limit on the duration of this implied warranty unless it is reasonable. A car that breaks down before 36k miles is not fit for reasonably expected use, nor is 36k miles a reasonable limit on the implied warranty of merchantability. I will do everything in my power to enforce these laws against Mazda, but I need your help! No claim under Magnuson-Moss may be filed as a class action unless there are at least 100 similarly-situated plaintiffs. Based on reading these posts I am confident there are enough of us out there, but I would appreciate all the help I can get in aggregating names, contact info, and evidence. You can start by just shooting me a quick email. I will do everything I can to keep you all updated on the status of the suit. For the record, I experienced the same symptoms everyone else is describing: you try to let the clutch pedal out but, right where the take-up point should be, the engine just keeps revving without engaging the transmission. I was able to continue driving around like this, always nursing the car up to speed, for about 250 miles before it gave out altogether and there was zero traction on the clutch plate. I talked to my usual mechanic, a Japanese Auto Repair specialist, and he said the earliest he ever sees clutches burn out is 60-70k miles, and that is with drivers who really abuse their cars. With merely average treatment, standard range should be 120-130k, and babying it should get you 150-180k+. In any event, having a clutch burn out on a 4 cylinder front wheel drive Japanese car in under 36,000 miles is not "normal wear and tear" as Mazda claims. I called Mazda corporate customer service explaining as much and got the runaround. Well they messed with the wrong law student! Please join me, and let's make Mazda regret their decision to shirk their moral and legal responsibilities!
Sincerely yours, Matty Ochmanek JD Candidate, Class of 2013 UC Irvine School of Law ochmanek@gmail.com

-50-

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| 2010 | 07/07/2012 | My clutch just failed at 24,000 miles. I just got of the phone with Mazda corporate and they were not very helpful as anticipated. Has anybody had any luck with the Mazda corporate customer service department or attempted to file a class action lawsuit regarding this issue? |
|------|------------|---|
| 2010 | 01/20/2012 | Not much to say that hasn't been said about this issue already. Dealer says its normal wear and tear and wont even call the warranty center to lodge a case. Had I known I would be spending $2K to replace the clutch at 30K miles I would never have bought the car. |
| 2010 | 111/22/2010 | I had a 2010 Mazda3 sedan. At 14,800 miles, the clutch suffered a catastrophic and sudden failure. I took it in to the dealership, feeling good cause I had been paying a lot of money for an extended warranty, and of course, I knew that I hadn't destroyed a brand new clutch in 15,000 miles. To my horror, they called me the next day saying "the clutch disk is ruined due to driver error" and it would cost $1200 to fix. They also claimed that the disk is a "normal wear" item that is not covered under the warranty. Basically, I raised holy hell with the dealership, who knew it was bull***, so they raised hell with corporate, who refused to admit that the clutch was defective. Eventually, they paid for the new part, and the dealership, feeling bad paid for $200 of the labor. In the end, I was ripped for $640 to replace a brand new clutch with under 15,000 miles of use, which should have been covered under the extended warranty I was paying for. Plus, I drive 5 days/week in the nastiest Los Angeles rush hour traffic. So, knowing that they simply replaced the old clutch with the same, stock piece of junk, that would surely fail like the last one, I traded for an automatic Mazda3 hatch. Let's just hope that it doesn't have any defects, cause Mazda is SHADY. By the way, the car I had before I got the Mazda3 was a 1992 Acura integra, 120,000 miles. Sold it with the ORIGINAL clutch still in it and working perfectly. |
| 2010 | 10/26/20111 | I've had this car for about 2 years and it's got less than 19,000 miles on it. The clutch has already blown as it takes a lot of rev's to get the car moving slowly and yesterday, I could smell the burn. Mazda dealership says they don't think it's covered under warranty because it's normal wear and tear and I asked if he thought it was normal that a car with less than 20,000 miles should need a new clutch. His response was no it's not normal but they would be charging me $800 to take it apart and look at it. This doesn't even include the parts and replacement if they "deem" it necessary. This is ridiculous, Mazda needs to come out and admit that the clutch on 2010's is weak and fix it or replace it. |
| 2010 | 10/29/2011 | COMPLETELY Shocked!! I had the same car, but the 2005 Model before this car and NO PROBLEMS!!!!!!!!! I had 85,000 miles on that car and NO PROBLEMS!! I have had this 2010 model for LESS THAN 2 years and the clutch is TOTALLY DAMAGED!!!!!!!! Not sure if this is some sort of scam but I for sure DO NOT HAVE $1.,680 dollars lying around to fix this car! |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| 2010 | 10/20/2011 | Hard to believe I have only owned this car for 3 months and have to buy a new clutch. I have had other cars with over 100K with out having to replace clutches. TOTALLY A BAD PART NOT A TYPICAL WEAR PATTERN, MAZDA NEEDS TO STEP UP. |
| 2010 | 08/10/2010 | I am wondering if there was a problem with this clutch and if many of us help launch a complaint. I need to know how many other people have had this experience. I have been driving manual cars for 45 years and never had an issue. With the Mazda it disintegrated |
| 2010 | 06/27/2011 | Really want to like this car as it is a fun drive, but the clutch has got to go and really should be taken care of by the manufacturer as there is an ever increasing amount of complaints showing up on the web for such a new car. I have experienced pretty much the same symptoms as everyone else, but seemed to sneak out a few more miles. Car slipping out of gear when accelerating and clutch not engaging until almost completely let out. Dealer seemed stunned as he said, " never heard of this happening." I told him he just needs to look it up...I was more stunned at the $1340 repair cost on a year old car. The problem now is that I don't have an extra $1300 sitting around, and I definately do not want the same piece of junk put in as a replacement. Solution...get an aftermarket clutch kit, and have my regular mechanic put it in for half the cost. Only problem is that there are no aftermarket clutch kits that I can find for this car. So here I sit with a vehicle that I can only get repaired if I want to pay way too much for a part I knoe will just fail again.<br>Mazda needs to get off their tails and remedy this before word really gets out. |
| 2010 | 07/12/2011 | I was driving my car home one night and I noticed on the highway the RPMS were jumping while I was in 6th gear. This continued when I pulled off the highway and was taking backroads. By the time I got 10 minutes down the road, the car was undriveable and would NOT move at all, I could not shift into any of the gears, and the clutch was a bit looser than normal. I had it towed to the closest dealership, and am currently fighting them about having them fix it under warranty. The way I drive should allow the clutch to last to at least 100k miles. I had no warning of this happening, even drove to Florida and back with no issues a couple days prior, and then all of a sudden this happened in the middle of the night in backroads of PA in bear country. Being a young female this put me in an extremely compromising position since I was alone. |
| 2010 | 06/05/2011 | Premature clutch failure and the warranty wont cover it said that it was abused, the abuse here is the neglect from Mazda to admit the parts are cheap. When you have just paid out good money for the car this is ridiculous.<br>Update from Sep 4, 2011<br>Mazda did go ahead and pay for it, I guess they may have a Conscience after all. Still think that it is an inferior product. |

| 2010 | 07/06/2011 | Bought this vehicle new in May 2009. Car is driven 200 interstate miles daily for work. Very little in town driving. Clutch rarely used. Cannot believe we had to replace it! This is our 4th Mazda and the newer they are, the worse they are made. Our '88 626 had 268K miles when we gave it away to a college kid to drive till she died - he is still driving it. Our '89 323 had 236K miles when we gave it away. We currently own an '04 3 (replaced clutch, transmission and 3rd gear at around 100K) and now the '10 needed a new clutch - won't be buying a 5th one. |
| --- | --- | --- |
| 2010 | 03/25/2011 | I have a 2010 3 2.5 5 door sport with the 6 speed manual. I have put 17,000 mostly highway miles on it (drive back and froth from Alabama to Texas a lot). This car spends most of its life in 6th gear with the cruise on. Here is some background, I've driven mostly Hondas and Acuras and with only a couple of exceptions I have driven stick shift cars for 20 years. My last car was a Civic with 120,000 miles on the original clutch that still felt brand new. I have been in the Auto industry for 15 years and know my way around a car. On Friday my wife was driving my car (she learned how to drive on a manual and has no problems driving it) on a back country 2 lane road with our son in the back and out of cell phone coverage. She was driving along at 60 mph, in 6th gear when the RPS started to bounce off the rev limiter. She checked to make sure she was still in gear. She took it out of 6th and put it into neutral then tried to go back into gear. No dice, it wouldn't shift. So she pulled over and shut it down. She tired to start again, tried to get it into first, nope, tried to get it into second, and nothing. Amazingly she got some signal on the phone after a panicked 20 minutes and got roadside assistance out to tow her in. Now Mazda is saying that the clutch is burned up and that it is not a defect so it is our fault and it won't be covered under warranty. Now, I have never heard of spontaneous and catastrophic clutch failure, with NO prior slippage or difficulty shifting being due to driver error. |
| 2010 | 01/03/2011 | It has hard to believe that a clutch that is not defective would be 'in pieces" after one year of driving, primarily freeway travel. |
| 2010 | 12/25/2010 | Same problem here and dealing with it right now. 2010 Mazda 3 2.5 with 33K miles on it. Driving on the highway, tried speeding up and noticed my engined just revved up and then back down and locked into gear again. I thought, that's really weird. About 15 miles later, tried shifting into gear, and boom! nothing, I could easily push my clutch in and put the shifter into position but it would not go into gear....any of them. Dealership said it would cost $800+ to "diagnose" the problem & I would pay for parts if it's a clutch issue. I was upset, cause I thought this car would last forever with very little problems except normal maintenance. So I called Mazda Corp. they said they don't pay for a diagnoses but will pay if it's a problem covered by warranty. Here's my problems, Why isn't anyone questioning the fact that someone at Mazda Corp. picked a supplier that is making a cheap part that is failing and should be recalled and replaced with a better quality part? If Mazda |

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

| | | |
|---|---|---|
| | | Corp does not cover this problem I will be contacting the News and my good friend is a news anchor for Channel 2 in Houston! I mean really, I'm having clutch or transmission issues in the first year with only 33K miles on it. I would have rather bought a used BMW or Lexus. I'm terribly disappointed right now!!!! |
| 2010 | 10/03/2010 | Well the Car is 1 year old...since maybe a week or less ago..and has 24k on it. the clutch has to replace...now im 26years old I dont race,powershift...just go to work and friend ..ive had a sunbird for 5 years also manual and the car about 15- years old with original clutch...and I got mazda dealer telling me that its my fault the clutch is dead and as far as i know i dont "ride the clutch" my brake use as normal much as other cars |
| 2010 | 07/29/2009 | The car was for my daughter. It was a manual shift. Five miles on it when I left the dealer, 8 miles when I got home. I was showing my daughter how to drive it and the clutch burned out after 5 miles of driving. No more than hiccuping as she learned to drive it but was getting the hang of it after about 20 minutes. Dealer took 2 days looking at it to see if it was abuse to the car or a car problem. They said it was so unusual. Interesting that because it was unusual it was our fault. How are they going to prove that anyway? |
| 2011 | 03/17/2015 | Brought our car in for some basic maintenance to keep our warranty until 120,000 km. At 100,000 km now. Technician came out to say that the clutch was going and needed to be replaced. This car is only ever driven on the highway and the drivers have 12 and 17 years each of driving a standard car. NEVER had to replace a clutch in the past. This is an absolute joke. This car is basically brand new and there is no excuse for the clutch to be going already. Obviously a cheap, piece of junk part was used at the manufacturers. We were planning to buy a second car in about a year or two. Won't be a Mazda. |
| 2011 | 01/15/2014 | I will never buy a Mazda again I have been driving manual transmission for over 12 years and the clutch goes on my Mazda 3 in 2 years of car ownership. Mazda has the nerve to say that it is my fault and that VW clutch is different from Mazda clutch (mind you it is a Mazda/ VW dealership) BUNCH of Crap, because they do not know how to install a clutch. 6 months later at 3 years my AC is now not working correctly. Selling this lemon. |
| 2011 | 04/08/2012 | The clutch gave out at under 12,000 miles and the dealer is saying that it is " user error". Now I have owned a number of manual cars and my most recent car was a 2010 Mazda Speed that I traded in at 30K miles so I am not sure how I could have apparently "misused" this car when all of my other cars were in perfect working condition when I got rid of them! I have contacted the dealer, and mazda customer service and they all refuse to admit that there is a possibility that the clutch was defective to begin with. This has been absolutely horrific! I cannot believe that I am spending 1400 dollars on a brand new car! |

| 2011 | 07/13/2013 | I first took my car in to the dealer when I noticed the clutch slipping after I shifted or when I accelerated at freeway speeds. Now, after 16 days, I finally have my 2011 Mazda 3 back with a completely new clutch assembly. Mazda paid 50%, not including the rental car. My final bill: $700 (not including the rental car cost for this time). They replaced not only the clutch disc, but the flywheel and associated bearings and parts. Apparently they consider replacing the clutch at 2 years / 20k miles to be "normal wear and tear" and not under warranty. In my opinion, the fact that it wore out so quickly, in itself, means it was defective. I have driven a manual car for almost 10 years (previously a Mazda RX-7) without any issues. I do not abuse my car, I do not ride the clutch, and I do not let anyone else drive the car. Mazda would not allow me to speak to anyone with the authority to assist me, specifically the district manager who made the decision. On top of that, the woman I spoke with when I called their customer service line at (800) 222-5500 was not only unhelpful, but flat out rude and confrontational.<br><br>After this experience, I plan to trade this car due to the fact that it will need another new clutch at 40k miles of normal driving. Mazda has lost a loyal customer for life with their "guilty until proven innocent" mentality toward warranty claims. |
| 2011 | 12/01/2012 | BOUGHT THIS POS IN 1-2011 BRAND NEW NOT EXPECTING TO PUT A DIME IN IT FOR A REALLY LONG TIME. I DROVE A STICK FOR 25+ YEARS. I HAVE NEVER HAD TO REPLACE A STINKIN CLUTCH, EVER! UNTIL NOW. NOT COVERED BY WARRANTY. HAD TO DROP $1500.00 OR VOID THE WARRANTY. I NEED A CAR FOR THE WIFE BUT I WILL NEVER BY A JAP POS (MAZDA) EVER AGAIN. THEY BLAMED ME! WHATA JOKE. DID I MENTION 25+ YEARS DRIVING A CLUTCH?? I WILL SPEND THE REST OF MY LIFE TRASHING MAZDA BECAUSE OF THIS. HOPE IT'S WORTH IT/ STARTING HERE. TIME TO MOVE TO THE NEXT BOARD. DID I MENTION MAZDA SCHAUMBURG ILLINOIS IS A RIP OFF. FROM SALES TO SERVICE! NEVER EVER AGAIN. i GOTTA GET THIS "SUCKER" ERASED FROM MY FOREHEAD. I'LL TRY GASOLINE IF NEED BE! OOOHHHHH, ONLY 15,000 MILES ON THIS POS! DON'T BY ONE!!!!!! ANY MAZDA THAT IS. I HAVE THE REST OF MY LIFE PLANED, BASH MAZDA FOR EVER! |
| 2011 | 08/21/2012 | this car is garbage i owned it for 4 months and the clutch went out. the dealership tried to sell me a new one and only give me $9500 for this one. i got more for my '06 f 150 with over 100,000 miles. i got this car because of the mpg and "reliability" big mistake. i would rather have a truck that gets 13 highway mpg then have this "car" with 33mpg. Mazda doesn't stand behind their product and was no help the dealership was just as bad. i will never buy a foreign car or buy one |

-55-

| | | |
|---|---|---|
| | | from upstate new york for that matter. once people find out you are in the military the think you are made of money and try to scam you every chance they get. i am glad they appreciate my service because i sure as hell don't appreciate theirs. i am purchasing a different vehicle soon as i get the money and it sure as hell won't be foreign! |
| 2012 | 08/21/2014 | I have a Mazda3 2.5 liter engine. It has a 6 speed transmission. I've been driving a clutch for 41 years. My last car, a 2000 Volkswagen Jetta 5 speed, logged just 125,000 miles. Never put a clutch in it. My Mazda 3 2.5 liter engine 6 speed manual transmission at 22,000 miles had to replace the clutch and all its components. Dealership told me user error. <br> I won't mention at this time that I took it to the dealer Mike Bass Mazda on route 254 Sheffield Ohio, where it was purchased, 3 times to have my tires balanced without a good result. I was told nothing else could be done. I had to take it to some private outfit. After two visits problem resolved. Not really a confidence builder. I noticed what felt like some slippage in the clutch coming home from work. The following day I attempted to take it to Mazda. Never made it. Stranded on the highway. I had to get a tow. After a couple of days in the shop they tell me 1300 dollars. They say it's the driver's fault. Not covered under warranty. I didn't have it fixed at Mike Bass. No Thanks. |
| 2012 | 01/03/2014 | This Mazda is my first car that I ever financed, boy was that a mistake. The whole point in buying a new car is so it would be reliable and should there be any issues the 3 year bumper to bumper warranty would cover it. Nope. 21,000 miles later, my clutch goes out and I have to push my car home. A car that is only a year and a half old shouldn't have clutch failure this soon. It is unacceptable that according to Mazda this is a "wear and tear" part, thus pinning the blame on the customer and their driving styles rather than their faulty parts. Obviously they will not stand behind their product and its just unacceptable that I am dropping this much on a brand new car. This is my first and last Mazda EVER. I am so disappointed that they are going to put the same crappy clutch in my car that is just going to go out 20,000 miles later once again. If there happens to be a class action lawsuit down the line I am so in. |
| 2012 | 01/06/2013 | The car is 14 months old and Mazda is trying to claim driver error in order to avoid covering the replacement under warranty. The clutch worked fine until it catastrophically failed driving down the road. So now I have an $18,000, year-old car that doesn't work. This is my fourth Mazda and I will never buy or recommend another. |
| 2013 | 08/02/2013 | I'm taking the time to register this complaint because there seems to be a problem here. I've only driven manual transmissions since 1988... that's my whole driving past... and I've never experienced this problem. this is my second mazda3... and trust me... I miss the 08 mazda3 GT I traded for this one... they don't even compare. so here is the issue I had last night with my new 2013 mazda3 skyactiv sport; I had stopped on a |

| | | hill and was trying to go forward when the engine raced up to 6000rpm and the clutch wouldn't engage... it felt as if there was no pressure as I pressed the clutch pedal to the floor. the engine stayed at 6000rpm for what seemed an eternity and blue smoke bellowed out of the engine compartment. I came off the clutch all together and the car stalled although I didn't feel any jerk. we ended up rolling backwards down the hill until I could turn into a driveway. I then drove down the hill and home and the strong smell of clutch burn could be smelled all the way home and lingered for several hours. i'm not impressed to read here that mazda won't go good for an item that i'm sure will fail soon on my car... oh, and don't get me started on the terrible fuel mileage i'm getting... |

### iv.    Other Sources of Knowledge

119.    Mazda is experienced in the design and manufacture of consumer vehicles.  As experienced manufacturers, Mazda likely conducts testing on incoming batches of components, including the Clutch Release Assembly, to verify that the parts are free from defects and comply with Mazda's specifications.  Accordingly, Mazda knew or should have known that the Clutch Release Assembly used in Class Vehicles is defective and likely to cause premature clutch failure, costing Plaintiffs and Class members thousands of dollars in repairs.

120.    Moreover, Mazda also should have known of the Defect due to the sheer number of reports of premature clutch failure in Class Vehicles.  For instance, Mazda's National Warranty Operations (NOW) interacts with Mazda-authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues.  NWO also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

121.    Mazda's National Warranty Operations also reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. Mazda dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Mazda with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case Mazda later determines to audit the dealership or otherwise verify the warranty repair.  For their part, service centers are meticulous

about providing this detailed information about in-warranty repairs to Mazda because they will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

122. Mazda also knew or should have known about the Defect because of the high number of replacement parts likely ordered from Mazda. All Mazda service centers are required to order replacement parts, including Clutch Assemblies, directly from Mazda. Other independent vehicle repair shops that service Class Vehicles also order replacement original equipment manufacturer (OEM) parts directly from Defendants. Thus, Mazda has detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The sudden increase in orders for Clutch Assembly components used in the Class Vehicles, including the Clutch Release Assembly, was known to Mazda, and should have alerted them to the scope and severity of the Defect.

123. The timing of the aforementioned complaints, coupled with the other means through which Mazda monitors vehicle performance, clearly establishes that Mazda had knowledge of the n Defect prior to the time of sale of all of the Class Vehicles.

**C.    Mazda's Warranty-Related Practices**

124. Mazda typically issues two warranties relevant to each Class Vehicle: a "New Vehicle Limited Warranty," and a "Powertrain Limited Warranty."

125. Under the new vehicle warranty, Mazda agreed to repair defects reported within the earlier of 3 years or 36,000 miles.

126. Under the powertrain warranty, Mazda agreed to repair defects affecting various powertrain components through 5 years and 60,000 miles. According to the Warranty Information Booklet, Powertrain Coverage Components include the flywheel and the clutch pressure plate.

127. Mazda also provided Class Members who purchased Certified Pre-Owned Class Vehicles a 7-year/70,000 mile Powertrain Limited Warranty that likewise covered the flywheel and clutch pressure plate.

128. Mazda instructs vehicle owners and lessees to bring their vehicles to a Mazda dealership for the warranty repairs. Many owners and lessees, including certain Plaintiffs, have presented Class Vehicles to Mazda dealerships with complaints related to the Defect.

-58-

129.     Mazda has evaded its warranty obligations by failing to tell consumers that their vehicles are defective and by claiming that premature failure of the Clutch Assembly, including components covered by the powertrain warranty, is acceptable or the result of driver error, and not indicative of a defect requiring warranty repairs or replacements (even though Mazda knows that the Defect is present in every Class Vehicle).

130.     Mazda also has violated, and continues to violate, secret warranty laws, including the California Secret Warranty Law and the Connecticut Secret Warranty Act.  For instance, the California Secret Warranty Law was enacted to abolish "secret" warranties.  The term "secret warranty" is used to describe the practice by which an automaker establishes a policy to pay for repair of a defect without making the defect or the policy known to the public at large.  Because owners are kept in the dark about the cost-free repairs, the automaker only has to reimburse or repair the vehicles of those consumers who complain loudly enough; the quiet consumer either pays to fix the defect out-of-pocket or continues driving the defective vehicle.

131.     Plaintiffs allege that Mazda has violated California Secret Warranty Law by extending its warranty to cover repairs to the Clutch Assembly included in Class Vehicles, including covered and non-covered components, when such repairs purportedly are not normally covered by Mazda under warranty.  Normally, Mazda does not cover clutch repairs required due to premature clutch failure under warranty on grounds that the clutch is a "wear" part exempt from warranty coverage, even if, as alleged herein, a covered part such as the flywheel also has failed, or if the consumable part failed due to a defect in a covered component (such as the Clutch Release Assembly).

132.     Notwithstanding this stated limitation, however, Mazda, as evidenced by the experiences of some Plaintiffs and absent Class members, often will agree to cover repair necessitated by the Defect under either its New Vehicle Limited Warranty, its Powertrain Warranty or an extended warranty program.  Thus, by extending its warranties to cover Clutch Release Assembly repairs, Mazda has "expand[ed] or extend[ed] the consumer's warranty beyond its stated limit."  This program constitutes an adjustment program under the Secret Warranty Law, one which Mazda was dutybound to make known to its dealers and customers.

## CLASS ALLEGATIONS

133.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**
All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

134.    In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above.  Specifically, the State Classes consist of each of the following:

**California Class:**
All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

**Texas Class**:
All persons or entities in Texas who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

**Maryland Class**:
All persons or entities in Maryland who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

**Florida Class**:
All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

**Washington Class**
All persons or entities in Washington who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

**Colorado Class**
All persons or entities in Colorado who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

**Pennsylvania Class**
All persons or entities in Pennsylvania who are current or former owners

-60-

and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

**Connecticut Class**
All persons or entities in Connecticut who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes.

135.    The California Class, Texas Class, the Maryland Class, the Florida Class, the Washington Class, the Pennsylvania Class and the Connecticut Class shall be collectively referred to herein as the "State Classes."

136.    In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs Humphrey, Gonzalez, Stom, Bunch, Woodward, Thomason, Massa and  seek to represent the following subclass regardless of whether the Nationwide Class is certified:

**Warranty Denial Subclass**
All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle and who were denied warranty coverage for repairs to the Clutch Assembly despite presenting their vehicle to Mazda for repairs within the three-year/36,000 mile New Vehicle Limited Warranty period, the five-year/60,000 mile Powertrain Warranty period, the seven-year/70,000 mile Certified Pre-Owned Powertrain Warranty, or any other extended warranty plan sold by Defendants.

137.    In the alternative to the Nationwide Warranty Denial Subclass, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Class above.  Specifically, the State Classes consist of each of the following:

**California Warranty Denial Subclass**
All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle and who were denied warranty coverage for repairs to the Clutch Assembly despite presenting their vehicle to Mazda for repairs within the three-year/36,000 mile New Vehicle Limited Warranty period, the five-year/60,000 mile Powertrain Warranty period, the seven-year/70,000 mile Certified Pre-Owned Powertrain Warranty, or any other extended warranty plan sold by Defendants.

-61-

**Texas Warranty Denial Subclass**

All persons or entities in Texas who are current or former owners and/or lessees of a Class Vehicle and who were denied warranty coverage for repairs to the Clutch Assembly despite presenting their vehicle to Mazda for repairs within the three-year/36,000 mile New Vehicle Limited Warranty period, the five-year/60,000 mile Powertrain Warranty period, the seven-year/70,000 mile Certified Pre-Owned Powertrain Warranty, or any other extended warranty plan sold by Defendants.

**Maryland Warranty Denial Subclass**

All persons or entities in Maryland who are current or former owners and/or lessees of a Class Vehicle and who were denied warranty coverage for repairs to the Clutch Assembly despite presenting their vehicle to Mazda for repairs within the three-year/36,000 mile New Vehicle Limited Warranty period, the five-year/60,000 mile Powertrain Warranty period, the seven-year/70,000 mile Certified Pre-Owned Powertrain Warranty, or any other extended warranty plan sold by Defendants.

**Washington Warranty Denial Subclass**

All persons or entities in Washington who are current or former owners and/or lessees of a Class Vehicle and who were denied warranty coverage for repairs to the Clutch Assembly despite presenting their vehicle to Mazda for repairs within the three-year/36,000 mile New Vehicle Limited Warranty period, the five-year/60,000 mile Powertrain Warranty period, the seven-year/70,000 mile Certified Pre-Owned Powertrain Warranty, or any other extended warranty plan sold by Defendants.

**Florida Warranty Denial Subclass**

All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle and who were denied warranty coverage for repairs to the Clutch Assembly despite presenting their vehicle to Mazda for repairs within the three-year/36,000 mile New Vehicle Limited Warranty period, the five-year/60,000 mile Powertrain Warranty period, the seven-year/70,000 mile Certified Pre-Owned Powertrain Warranty, or any other extended warranty plan sold by Defendants.

**Colorado Warranty Denial Subclass**

All persons or entities in Colorado who are current or former owners and/or lessees of a Class Vehicle and who were denied warranty coverage for repairs to the Clutch Assembly despite presenting their vehicle to Mazda for repairs within the three-year/36,000 mile New Vehicle Limited Warranty period, the five-year/60,000 mile Powertrain Warranty period, the seven-year/70,000 mile Certified Pre-Owned Powertrain Warranty, or any other extended warranty plan sold by Defendants.

CLASS ACTION COMPLAINT
CASE NO.:  3:16-CV-02087

**Pennsylvania Warranty Denial Subclass**
All persons or entities in Pennsylvania who are current or former owners and/or lessees of a Class Vehicle and who were denied warranty coverage for repairs to the Clutch Assembly despite presenting their vehicle to Mazda for repairs within the three-year/36,000 mile New Vehicle Limited Warranty period, the five-year/60,000 mile Powertrain Warranty period, the seven-year/70,000 mile Certified Pre-Owned Powertrain Warranty, or any other extended warranty plan sold by Defendants.

138.     The state-specific warranty subclasses identified above shall be collectively referred to herein as the "Warranty State Classes."

139.     The Nationwide Class, Warranty Class and other State Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

140.     Numerosity:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Mazda and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Class.

141.     Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.  The Class Vehicles were sold with a Defect;

    b.  Mazda knew of the Defect but failed to disclose the problem and its consequences to its customers;

    c.  A reasonable consumer would consider the Defect or its consequences to be material;

-63-

d. Mazda has failed to provide free repairs as required by its new vehicle limited warranty and/or powertrain warranty;

e. Mazda's expansion of its warranty coverage constitutes an adjustment program under California's secret warranty law;

f. Mazda should be required to disclose the existence of the Defect and its warranty expansion; and

g. Mazda's conduct violates the California Legal Remedies Act, California Unfair Competition Law, and the other statutes asserted herein;

142. <u>Typicality</u>: All of the Plaintiffs' claims are typical of the claims of the Class since each Plaintiff purchased a Class Vehicle with the Defect, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Mazda's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

143. <u>Adequacy</u>: All of the Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

144. <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Mazda's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class

-64-

can be readily identified and notified based on, *inter alia*, Mazda's vehicle identification numbers, warranty claims, registration records, and database of complaints.

145.    Mazda has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**CAL. CIV. CODE § 1750, *et seq.***
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

146.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

147.    Plaintiffs bring this claim on behalf of themselves and all members of the Nationwide Class against all Defendants.

148.    Defendants are "persons" as that term is defined in CAL. CIV. CODE § 1761(c).

149.    Plaintiffs and the Class are "consumers" as that term is defined in CAL. CIV. CODE §1761(d).

150.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

151.     Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

152.     Defendants knew that their Class Vehicles and their Clutch Assemblies were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

153.     Defendants were under a duty to Plaintiffs and the Class to disclose the defective nature of the Class Vehicles and the Defect because:

    a.     Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

    b.     Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles and had a dangerous safety defect until manifestation of the defect;

    c.     Defendants knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs necessitated thereby until the manifestation of the defect.

    d.     Defendants actively concealed the safety and security defect and the associated repair costs by claiming the Defect does not exist and, in many cases, repairing Class Vehicles using similarly defective Clutch Release Assemblies.

154.     In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

155.     The facts concealed or not disclosed by Defendants to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price.  Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

156.     Under California Civil Code § 1780(a), Plaintiffs and members of the Class seek injunctive and equitable relief for Defendants' violations of the CLRA.

157.     Once all named Plaintiffs have perfected notice and demand under California Civil Code § 1782(a) & (d), Plaintiffs will amend this Complaint to also include a request for damages. Plaintiffs and members of the Class request this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired with such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE
### CAL. BUS. & PROF. CODE § 17200
### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

158.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

159.     Plaintiffs bring this claim on behalf of themselves and all members of the Nationwide Class against all Defendants.

160.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

161.     Defendants have engaged in unfair competition and unfair, unlawful and/or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class members that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem). Defendants should have disclosed this information because they were in a superior position to know the true facts related to this design defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to this defect.

162.     The Defect constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers as set forth above.

163.     These acts and practices are fraudulent because they have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Defect and suppressing other material facts from

-67-

Plaintiffs and the Class members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

164.    The injuries suffered by Plaintiffs and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided. Therefore Defendants also have engaged in unfair practices.

165.    Defendants' acts and practices also are unlawful because they violate CAL. CIV. CODE §§ 1668, 1709, 1710, and 1750 *et seq.*, and CAL. COMM. CODE § 2313.

166.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitution and disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

## THIRD CAUSE OF ACTION
### THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY VIOLATIONS OF CALIFORNIA CIVIL CODE §§ 1792, 1791.1, *et seq.*
#### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

167.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

168.    Plaintiffs bring this claim on behalf of themselves and all members of the Nationwide Class against all Defendants.

169.    At all relevant times hereto, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles. Defendants knew or should have known of the specific use for which the Class Vehicles were purchased.

170.    Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.

171.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, the following: (i) a warranty that the Class

-68-

Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Mazda were safe and reliable for providing transportation and would not experience premature clutch failure due to a design and/or manufacturing defect; and (ii) a warranty that the Class Vehicles would be fit for their intended use – providing safe and reliable transportation – while the Class Vehicles were being operated.

172.    Contrary to the applicable implied warranties, however, the Class Vehicles are not fit for their ordinary purpose of providing safe and reliable transportation because of the Defect.

173.    Defendants breached implied warranties applicable to Class Vehicles at the time of sale because the Defect was latent at the time Plaintiffs and Class Members purchased their vehicles.

174.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of CAL. CIV. CODE §§ 1792 and 1791.1.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S SECRET WARRANTY LAW**
**CAL. CIV. CODE § 1795.92**
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

175.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

176.    CAL. CIV. CODE  § 1795.90, et seq., sets forth what is commonly known as the Secret Warranty Law.  CAL. CIV. CODE § 1795.92 requires notification by manufacturers to purchasers and lessees of their products of an "adjustment program."

177.    CAL. CIV. CODE  § 1795.90 defines an "adjustment program" as a program where the original warranty is expanded or extended, or where a manufacturer offers to pay or reimburse for repairs to a condition affecting durability or reliability of a vehicle.

178.    Defendants have violated California Secret Warranty Law by extending applicable warranties to cover repairs to the Clutch Assembly included in Class Vehicles, including covered and non-covered components, when such repairs purportedly are not normally covered under warranty.

179.    Normally, Mazda does not cover clutch repairs required due to premature clutch failure under warranty on grounds that the clutch is a "wear" part exempt from warranty coverage, even if, as alleged herein, a covered part such as the flywheel also has failed, or if the consumable part failed due to

-69-

a defect in a covered component (such as the Clutch release Assembly).  But as evidenced by the experiences of some Plaintiffs and absent Class members, Defendants often will agree to cover repair necessitated by the Defect under either Mazda's New Vehicle Limited Warranty, its Powertrain Warranties or an extended warranty program.  Thus, by extending its warranties to cover Clutch Release Assembly repairs, Mazda has "expand[ed] or extend[ed] the consumer's warranty beyond its stated limit."  This program constitutes an adjustment program under the Secret Warranty Law for this reason as well.

180.    As the manufacturers of the Class Vehicles, Defendants are obligated to notify all owners or lessees of the Class Vehicles eligible under the adjustment program described above of the terms and conditions of the program within ninety (90) days of the program's implementation.  Plaintiffs are informed and believe, and thereon allege, that Mazda failed to provide this required notification.  Specifically, Mazda did not notify Plaintiffs or any other owner or lessee of a Class Vehicle of their right to free repairs necessitated by the Defect repairs under warranty, or of their right to be reimbursed for the costs of those repairs.

181.    As the manufacturers of the Class Vehicles, Defendants had a duty to notify the California Department of Motor Vehicles of the terms and conditions of the above described adjustment program.  Plaintiffs are informed and believe, and thereon allege, that Defendants failed to provide this required notification.

182.    As the manufacturers of the Class Vehicles, Defendants also had a duty to ensure that Plaintiffs and other Class members who incurred an expense for repair of the Defect prior to acquiring knowledge of the program would be reimbursed.  Plaintiffs are informed and believe, and thereon allege, that Defendants failed to provide consumers with notice of their right to reimbursement under its Secret Warranty program.

183.    As a result of the aforementioned conduct by Defendants with regard to its secret warranty, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

184.    Pursuant to CAL. CIV. CODE § 17203, Plaintiffs and Class Members seek an order of this Court requiring Defendants to comply with the terms of the California Secret Warranty Law by (a)

notifying Class Members of the secret repair program described above; (b) providing free repairs necessitated by the Defect, consistent with the Secret Warranty Law; ( c) identifying and reimbursing all Class Members who have paid for repairs related to the Defect; (d) notifying California dealers of the facts underlying the Defect and the terms of the secret Defect repair program; and (e) notifying the California New Motor Vehicle Board of the secret Defect repair program.

185.   Plaintiffs and Class Members also seek an order (i) enjoining Defendants from failing and refusing to make full restitution of all moneys wrongfully obtained as a result of its violations of the California Secret Warranty Law, and (ii) disgorging to Plaintiff and Class Members all ill-gotten revenues and/or profits earned as a result of Defendants' violation of the California Secret Warranty Law, plus an award of attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
**VIOLATIONS OF THE TEXAS DECEPTOVE TRADE PRACTICES ACT**
**TEX. BUS. & COM. CODE ANN. § 17.01, *et seq*.**
**(In the Alternative, on Behalf of the Texas Class)**

186.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

187.   Plaintiffs Gonzalez and Bender ("Plaintiffs" for purposes of this Count) bring this claim on behalf of themselves and the Texas Class against all Defendants.

188.   The Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE ANN. § 17.01, *et seq*. ("DTPA") declares unlawful any false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

189.   Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

190.   In the course of Defendants' business, it willfully failed to disclose and actively concealed the dangerous risk of the Defect in the Class Vehicles as described above.  Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in the DTPA, including representing that Class Vehicles have characteristics, uses,

-71-

benefits, and qualities which they do not have; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

191. The Defect constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers as set forth above.

192. Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to this Defect. Defendants, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiffs and the Class members that Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

193. These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the design defect and suppressing other material facts from Plaintiffs and the Class members, Defendants breached their duties to disclose these facts, violated the DTPA, and caused injuries to Plaintiffs and the Class members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

194. The injuries suffered by Plaintiffs and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

195. A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Class. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

196. Plaintiffs have complied with the DTPA's notice requirements by providing written notice to Mazda of the claims alleged herein via certified mail.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT**
**FLA. STAT. § 501.201, *et seq.***
**(In the Alternative, on Behalf of the Florida Class)**

197.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

198.    Plaintiff Woodward ("Plaintiff" for purposes of this Count) brings this claim on behalf of himself and the Florida Class against all Defendants.

199.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).

200.    Defendants' actions set forth above occurred in the conduct of trade or commerce.

201.    In the course of Defendants' business, it willfully failed to disclose and actively concealed the dangerous risk of the Defect in the Class Vehicles as described above.  Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in FLA. STAT. § 501.204(1), including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

202.    The Defect constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers as set forth above.

203.    Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to this Defect.  Defendants, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiff and the Class members that Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

204.    These acts and practices have deceived Plaintiff and are likely to deceive the public. Defendants, by the conduct, statements, and omissions described above, and by knowingly and

-73-

intentionally concealing from Plaintiff and the Class members that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem), breached their duties to disclose these facts, violated the FDUTPA, and caused injuries to Plaintiff and the Class members.  The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

205.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

206.    Defendants' conduct proximately caused injuries to Plaintiff and other Class members. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF MARYLAND'S CONSUMER PROTECTION ACT ("MCPA")**
**MD. CODE, COM. LAW § 13-301, *et seq*.**
**(In the Alternative, on Behalf of the Maryland Class)**

207.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

208.    Plaintiff Stom ("Plaintiff" for purposes of this Count) brings this claim on behalf of himself and the Maryland Class against Defendant.

209.    Defendants are "persons" as that term is defined in MD. CODE, COM. LAW § 13-101(H).

210.    Plaintiff and the Class are "consumers" as that term is defined in MD. CODE, COM. LAW § 13-101(C)(1).

211.    Defendant engaged in unfair and deceptive acts in violation of the MCPA by willfully failing to disclose and actively concealing the dangerous risk of the Defect in the Class Vehicles as described above.  At a minimum, Defendants' acts and practices violate the following sections of the MCPA:

> (1) making false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers

-74-

1

2

(2)(i) Representing that consumer goods have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

3

4

(2)(iv) Representing that consumer goods are of a particular standard, quality, grade, style, or model which they are not

5

6

(3) Failing to state a material fact that tends to deceive, namely, failing to disclose that Class Vehicle suffer from the Defect, will not work as advertised and eventually will fail;

7

(5)(i) Advertising goods and services with the intent not to sell them as advertised.

8

9

10

(9)(i) Engaging in a deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods.

11

212.    The Defect constitutes a safety issue that triggered Defendants' duty to disclose the safety

12

issue to consumers as set forth above.

13

213.    Defendants should have disclosed this information because they were in a superior

14

position to know the true facts related to the Defect, and Plaintiffs and Class members could not

15

reasonably be expected to learn or discover the true facts related to this Defect.  Defendants, by the

16

conduct, statements, and omissions described above, also knowingly and intentionally concealed from

17

Plaintiffs and the Class members that Class Vehicles suffer from the Defect (and the costs, safety risks,

18

and diminished value of the vehicles as a result of this problem).

19

214.    These acts and practices have deceived Plaintiff and are likely to deceive the public.

20

Defendants, by the conduct, statements, and omissions described above, and by knowingly and

21

intentionally concealing from Plaintiff and the Class members that the Class Vehicles suffer from the

22

Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem),

23

breached their duties to disclose these facts, violated the MCPA, and caused injuries to Plaintiff and the

24

Class members.  The omissions and acts of concealment by Defendants pertained to information that

25

was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

26

215.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any

27

potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and

28

the Class members should have reasonably avoided.

-75-

216.    Defendants' conduct proximately caused injuries to Plaintiff and other Class members. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

### EIGHTH CAUSE OF ACTION
### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
### WASH. REV. CODE § 19.86.010, *et seq.*
### (In the Alternative, on Behalf of the Washington Class)

217.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

218.    Plaintiff Charles Bunch ("Plaintiff" for purposes of this Count) brings this claim on behalf of himself and the Washington Class against all Defendants.

219.    Washington's Consumer Protection Act ("WCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Wash. Rev. Code § 19.86.020.

220.    Defendants' actions set forth above occurred in the conduct of trade or commerce.

221.    In the course of Defendants' business, it willfully failed to disclose the dangerous risk of the Defect in the Class Vehicles as described above. Defendants also actively concealed the Defect by replacing failed Clutch Assemblies with similarly defective components. Accordingly, Defendants engaged in unfair and deceptive acts or practices.

222.    Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to this Defect. Defendants, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiffs and the Class members that Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

223.    These acts and practices have deceived Plaintiff and are likely to, and did, deceive the public. In failing to disclose the Defect and suppressing material facts from Plaintiff and the Class members, Defendants breached their duties to disclose these facts, violated the WCPA, and caused

-76-

injuries to Plaintiff and the Class members.  The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

224.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

225.    Defendants' conduct proximately caused injuries to Plaintiff and other Class members. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

**NINTH CAUSE OF ACTION**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**73 Pa. Stat. § 201-1, *et seq.***
**(On Behalf of the Pennsylvania Class)**

226.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

227.    Plaintiff Massa ("Plaintiff" for purposes of this Count) brings this claim on behalf of herself and the Pennsylvania Class against all Defendants.

228.    Plaintiff Massa is a natural person who purchased her Class Vehicle for personal, family or household purposes.

229.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as set forth in the statute.  73 Pa. Stat. § 201-3.

230.    Defendants engaged in unfair and deceptive acts in the conduct of trade or commerce in violation of the PUTP by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of PUTP § 201-2:

(4)(ii) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(4)(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

(4)(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(4)(ix) Advertising goods and services with intent not to sell them as advertised; and

(4)(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

231.    Defendants knew that their Class Vehicles and their Clutch Assemblies were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

232.    Defendants were under a duty to Plaintiffs and the Class to disclose the defective nature of the Class Vehicles and the Defect because:

a.  Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

b.  Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles and had a dangerous safety defect until manifestation of the defect;

c.  Defendants knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs necessitated thereby until the manifestation of the defect.

d.  Defendants actively concealed the safety and security defect and the associated repair costs by claiming the Defect does not exist and, in many cases, repairing Class Vehicles using similarly defective Clutch Release Assemblies.

233.    In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

234.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price.  Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased the Class

-78-

Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

235.    Unfair or deceptive acts and practices as defined by the UTPCPL also include "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made."  73 Pa. Stat. § 201-2(4)(xiv).  Defendants violated the UTPCPL by refusing to repair Plaintiff's flywheel and clutch pressure plate at no cost to her pursuant to the terms of the Powertrain Warranty issued when she purchased her Class Vehicle.

236.    Defendants' failure to honor their warranty terms proximately caused injuries to Plaintiff and other Class members. Had Defendants honored their warranty, Ms. Massa and other Class members would not have incurred substantial repair costs.

237.    Pursuant to 73 Pa. Stat. § 201-9.2, Plaintiff requests that the Court grant treble damages.

## TENTH CAUSE OF ACTION
### VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
#### CONN. GEN. STAT. § 42-110A, *et seq.*
### (On Behalf of the Connecticut Class)

238.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

239.    Plaintiff Carney ("Plaintiff" for purposes of this Count) brings this claim on behalf of himself and the Connecticut Class against all Defendants.

240.    The Connecticut Unfair Trade Practices Act ("CUPTA") prohibits persons from employing "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," and it was the intention of "the [Connecticut] legislature that this chapter be remedial and be so construed."  Conn. Gen. Stat. § 42-110b(a), (d).

241.    Defendants are "persons" as that term is defined in Conn. Gen. Stat. § 42-110a(3).

242.    Plaintiff is a "consumer" as that term is defined in Conn. Gen. Stat. § 42-227(a)(1).

243.    Conn. Gen. Stat. § 42-227 sets forth what is commonly known as the Secret Warranty Act.  The Secret Warranty Act requires manufacturers to notify purchasers and lessees of their products of an "adjustment program," and to "assure reimbursement of each consumer eligible under an adjustment program who incurs expenses for repair of a condition subject to the program prior to

acquiring knowledge of the program." Conn. Gen. Stat. §§ 42-227(b)-(f). Any violation of the Secret Warranty Act also constitutes a violation of CUPTA. Conn. Gen. Stat. §§ 42-227(h).

244. Conn. Gen. Stat. §§ 42-227(a)(4) defines an "adjustment program" as a program where the original warranty is expanded or extended, or where a manufacturer offers to pay or reimburse for repairs to a condition affecting durability or reliability of a vehicle.

245. Defendants have violated Connecticut's Secret Warranty Act by extending applicable warranties to cover repairs to the Clutch Assembly included in Class Vehicles, including covered and non-covered components, when such repairs purportedly are not normally covered under warranty. Normally, Mazda does not cover clutch repairs required due to premature clutch failure under warranty on grounds that the clutch is a "wear" part exempt from warranty coverage, even if, as alleged herein, a covered part such as the flywheel also has failed, or if the consumable part failed due to a defect in a covered component (such as the Clutch Release Assembly). But as evidenced by the experiences of some Plaintiffs and absent Class members, Defendants often will agree to cover repair necessitated by the Defect under either Mazda's New Vehicle Limited Warranty, its Powertrain Warranty or an extended warranty program. Thus, by extending its warranties to cover Clutch Release Assembly repairs, Mazda has "expand[ed] or extend[ed] the consumer's warranty beyond its stated limit," which constitutes an adjustment program under the Secret Warranty Act.

246. As the manufacturers of Class Vehicles, Defendants are obligated to notify all owners or lessees of Class Vehicles eligible under the adjustment program described above of the terms and conditions of the program within ninety (90) days of the program's implementation. Plaintiffs are informed and believe, and thereon allege, that Mazda failed to provide this required notification. Specifically, Mazda did not notify Plaintiffs or any other owner or lessee of a Class Vehicle of their right to free repairs necessitated by the Defect, repairs under warranty, or of their right to be reimbursed for the costs of those repairs.

247. As the manufacturers of Class Vehicles, Defendants also had a duty to ensure that Plaintiff and other Class members who incurred an expense for repair of the Defect prior to acquiring knowledge of the program would be reimbursed. Plaintiff is informed and believes, and thereon alleges,

that Defendants failed to provide consumers with notice of their right to reimbursement under its Secret Warranty program.

248.     As a result of the aforementioned conduct by Defendants with regard to its secret warranty, Plaintiff and other Class members incurred repair costs they would not have otherwise incurred, and have therefore suffered an ascertainable loss.

249.     Pursuant to Conn. Gen. Stat. § 42-110g, Plaintiffs and Class Members seek an order of this Court requiring Defendants to comply with the terms of the Connecticut Secret Warranty Act by (a) notifying Class Members of the secret repair program described above; (b) providing free repairs necessitated by the Defect, consistent with the Secret Warranty Act; ( c) identifying and reimbursing all Class Members who have paid for repairs related to the Defect; and (d) notifying Connecticut authorized dealers of the facts underlying the Defect and the terms of the secret Defect repair program.

250.     Plaintiffs and Class Members also seek an order (i) enjoining Defendants from failing and refusing to make full restitution of all moneys wrongfully obtained as a result of its violations of the Connecticut Secret Warranty Act, and (ii) disgorging to Plaintiff and Class Members all ill-gotten revenues and/or profits earned as a result of Defendants' violation of the Connecticut Secret Warranty Act, plus an award of punitive damages, and attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of the Warranty Subclass or, Alternatively the Warranty State Classes)**

251.     Plaintiffs Gonzalez, Stom, Bunch, Thomason, Massa and Humphrey, on behalf of themselves and the Warranty Subclass (or, in the alternative, each of their Warranty State Classes) incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

252.     Defendants provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain.  Accordingly, Defendants' warranties are express warranties under state law.

-81-

253.     The parts affected by the Defect, including the flywheel and pressure plate were manufactured and distributed by Defendants in the Class Vehicles and are covered by the warranties Defendants provided all purchasers and lessors of Class Vehicles.

254.     Defendants breached these warranties by selling and leasing Class Vehicles with the Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

255.     Plaintiffs notified Defendants of the breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendants also know of the Defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

256.     As a direct and proximate cause of Defendants' breach, Plaintiffs and the other Class members incurred substantial repair costs for which Defendants should have borne responsibility pursuant to the terms of their express warranties.

257.     Plaintiffs and the Warranty Subclass members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## TWELFTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY
**(On Behalf of the Nationwide Class or, Alternatively, Each of the State Classes)**

258.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

259.     Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the ordinary purpose for which the Class Vehicles were purchased.

-82-

260.    Defendants provided Plaintiffs and the other Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the Defect at the time of sale that causes the vehicles' clutch to fail prematurely. Because Class Vehicles require a Clutch Assembly that is free from defects in order to operate, the Class Vehicles are not fit for their ordinary purpose of providing safe and reliable transportation.

261.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their ordinary use while the Class Vehicles were being operated.

262.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles suffer from the Defect alleged herein.

263.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for ordinary use.

CLASS ACTION COMPLAINT
CASE NO.:  3:16-cv-02087

### THIRTEENTH CAUSE OF ACTION
### BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On behalf of the Warranty Class)

264.   Plaintiffs Gonzalez, Bunch and Stom, on behalf of themselves and the Warranty Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

265.   Plaintiffs and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

266.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

267.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

268.   Mazda's New Vehicle Limited 3 years/36,000 miles Basic Warranty and 5 years/60,000 miles Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

269.   Defendants breached these written warranties as set forth above.

270.   Plaintiffs and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

271.   Defendants' breach of the express warranties has deprived the Plaintiffs and the other Class Members of the benefit of their bargain.

272.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

273.   Defendants have been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and the other Class Members were not required to do so because

affording Defendants a reasonable opportunity to cure its breach of written warranties would have been futile.  Defendants were also on notice of the alleged Defect from the complaints and service requests it received from Class members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

274.    At the time they issued written warranties for Class Vehicles, Defendants also knew and had notice that Class Vehicles suffered from the Defect alleged herein. Defendants' continued misrepresentations and omissions concerning Class Vehicles and the Defect, as well as Defendants' failure to abide by their own written and implied warranties, are "[u]nfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." Accordingly, Defendants' behavior is unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

275.    As a direct and proximate cause of the conduct alleged herein, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendants' conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, and costs, including statutory attorney fees and/or other relief as deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B. appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

-85-

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

F.  award reasonable attorneys' fees and costs; and

G.  grant such further relief that this Court deems appropriate.

Dated:  April 20, 2016                     Respectfully submitted,
                                           MCCUNEWRIGHT LLP

                              By: _____/s/ Richard D. McCune_____
                                           Richard D. McCune
                                           Attorneys for Plaintiffs and Putative Classes

**JURY DEMAND**

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

                              By: _____/s/ Richard D. McCune_____
                                           Richard D. McCune
                                           Attorneys for Plaintiffs and Putative Classes

CLASS ACTION COMPLAINT
CASE NO.:  3:16-cv-02087