IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRIS GONZALEZ, et al.,<br>  Plaintiffs,<br>v.<br><br>MAZDA MOTOR CORPORATION, et al.,<br>  Defendants. | Case No. 16-cv-02087-MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND TO DISMISS; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 63 |

Before the Court is defendants Mazda Motor Corporation and Mazda Motor of America, Inc.'s (collectively, "Mazda") "Motion to Strike [Pursuant to Fed. R. Civ. P. 12(f)] Allegations Pertaining to Lithia Motors, Inc. and Motion to Dismiss [Pursuant to Fed. R. Civ. P. 12(b)(6)] Claims Alleged in the Third Amended Complaint," filed September 8, 2017. Plaintiffs have filed opposition, to which Mazda has replied. Having read and considered the parties' respective written submissions, the Court rules as follows.

## PROCEDURAL BACKGROUND

By order filed August 1, 2017, the Court dismissed, with leave to amend, the Fifth, Tenth, and Twelfth Causes of Action brought in plaintiffs' Second Amended Complaint on behalf of plaintiffs Heather Weeter ("Weeter") and Gregory Schaaf ("Schaaf"). On August 16, 2017, plaintiffs filed their Third Amended Complaint ("TAC"). By the instant motion, Mazda again seeks dismissal of the Fifth, Tenth, and Twelfth Causes of Action, as well as to strike certain newly added portions of the TAC.

## FACTUAL BACKGROUND

Plaintiffs allege Weeter is a "citizen of the State of Florida" who, "[o]n January 29, 2011," purchased a new Mazda vehicle "from Gunther Mazda, an authorized Mazda

dealer in Fort Lauderdale, Florida." (See TAC ¶¶ 88-89.)  Plaintiffs allege that "[o]n or around June 6, 2014," Weeter's vehicle required clutch-related repairs that "should have been covered by Mazda's Powertrain Warranty," but that Gunther Mazda told her the repairs were a "wear item not covered by warranty" and charged her for the cost of those repairs.  (See id. ¶ 91.)  Plaintiffs further allege that "[o]n or around September 6, 2016," Weeter "again brought her vehicle to Gunther Mazda," which informed her she needed additional clutch-related repairs that were, once more, "not covered by warranty."  (See id. ¶ 92.)  After paying Gunther Mazda "a diagnostic fee," plaintiffs allege, Weeter paid to have her vehicle repaired by "W M Auto Services, Inc." and, in October 2016, "disposed of" her vehicle "out of concern" that it had "an ongoing defect."  (See id. ¶¶ 92, 93, 95.)

Plaintiffs allege Schaaf is a "citizen of the State of North Carolina" who, "[i]n or around Spring 2011," purchased a new Mazda vehicle from "Sport Durst Mazda, an authorized Mazda dealer in Durham, North Carolina."  (See id. ¶¶ 97, 98.)  Plaintiffs allege that "[o]n or around January 3, 2013," Schaaf's vehicle required clutch-related repairs, which were made by Sport Durst Mazda "at no cost."  (See id. ¶ 100.)  Plaintiffs further allege that "[o]n or around April 1, 2016," Schaaf "was again forced to bring his vehicle to Sport Durst [Mazda]," which informed him he needed additional clutch-related repairs for which Schaaf was charged, even though, according to Schaaf, those repairs "should have been covered by Mazda's Powertrain Warranty."  (See id. ¶ 102.)

**DISCUSSION**

**A.  Motion to Strike**

A "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  See Fed. R. Civ. P. 12(f).  The TAC cites to and quotes passages from a dealer agreement between Mazda and Lithia Mazda of Fresno, California ("Lithia"), a Mazda dealer that is not a party to the instant action and from which no plaintiff alleges to have purchased a vehicle.  By the instant motion, Mazda seeks to strike, as immaterial or impertinent, all reference to Lithia from paragraphs 113 and 114 of said dealer agreement ("hereinafter, "Lithia Dealer Agreement"), and to strike

2

paragraphs 115 and 126 in their entirety. (See Mot. at 1:10-22.)[1]

In response, plaintiffs state the challenged language is intended to "illustrate the manner in which Mazda controls elements of vehicle advertising, and whether and how it discloses pervasive defects to its authorized dealers." (See Opp. at 3 n.2; see also TAC at 23:4 (describing Lithia Dealer Agreement as "example").) As Mazda correctly notes, however, the TAC contains no factual allegations to support an inference that the agreement between Mazda and Lithia is identical, or even similar, to any dealer agreement that may exist between Mazda and either Gunther Mazda or Sport Durst Mazda.

Accordingly, the motion to strike will be granted.

**B.    Motion to Dismiss**

### 1.    Legal Standard

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

---

[1] Mazda's unopposed Request for Judicial Notice of the Lithia Dealer Agreement, as well as a technical service bulletin ("TSB"), specifically, TSB #RF-12-17, both of which are cited in the TAC as support for plaintiffs' claims, is hereby GRANTED. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding courts may take judicial notice of documents "'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading'").

3

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

### 2. Plaintiffs' Claims

As noted above, Mazda moves to dismiss certain of Weeter and Schaaf's claims, each of which the Court addresses below.

#### a. Fifth Cause of Action (Weeter's Claim Under Florida Unfair and Deceptive Trade Practices Act)

In the Fifth Cause of Action, plaintiffs, on behalf of Weeter and those similarly situated, allege Mazda violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), by "willfully fail[ing] to disclose and actively conceal[ing] the dangerous risk of the [clutch-related] [d]efect." (See TAC ¶ 231).

In its prior order, the Court dismissed plaintiffs' FDUTPA claim as barred by the applicable four-year statute of limitations, and, in particular, for failure to allege facts sufficient to support tolling predicated on a theory of fraudulent concealment. (See Order, filed August 1, 2017, at 7:3-4 ("August 1 Order").) By the instant motion, Mazda again seeks dismissal of said claim as time-barred.

As set forth in the Court's prior order, a plaintiff, to "establish fraudulent concealment sufficient to toll the statute under Florida law, . . . must show": (1) the defendant's "successful concealment of the cause of action," (2) the defendant's use of "fraudulent means to achieve that concealment," and (3) the plaintiff's "reasonable care and diligence in seeking to learn the facts which would disclose the fraud." (See August

4

1 Order, at 5:24-6:7 (citing Berisford, 667 So. 2d. at 811-12).) As further set forth therein, "[t]he 'fraudulent means' alleged must go beyond mere non-disclosure, and must constitute active and willful concealment." (See id. (citing Licul v. Volkswagen Grp. of Am., Inc., No. 13-6186-CIV, 2013 WL 6328734, at \*6 (S.D. Fla. Dec. 5, 2013) (applying Florida law)).)

Here, plaintiffs argue, Mazda took "*active* steps to conceal" the defect. (See Opp. at 10:11 (emphasis in original).) In support thereof, plaintiffs first rely on their previous allegation that Gunther Mazda, on two occasions, told Weeter the clutch failure was due to a "wear item not covered by the warranty" and proceeded to make repairs (see TAC ¶¶ 91-92) using components which, plaintiffs assert, were "similarly defective" (see Opp. at 10:18). Plaintiffs then argue that the actions and statements of Gunther Mazda may be imputed to Mazda because "the authorized technician acted in accordance with Mazda policy." (See Opp. at 9-10.) As set forth below, however, plaintiffs have failed to allege in the TAC facts to show the existence of any such policy.

Plaintiffs allege that "Mazda has yet to disclose the [d]efect's existence to its authorized dealers." (See TAC ¶ 127.) In particular, plaintiffs now allege that in the absence of a TSB or recall, by which Mazda dealers ordinarily are informed of a defect,[2] such dealers "generally remain[ed] unaware of [the] defect's existence," conducted repairs using defective components, and "almost uniformly misinformed" plaintiffs. (See TAC ¶¶ 125, 127.)[3] Plaintiffs' new allegations as to conduct on the part of Mazda,

---

[2] Plaintiffs also cite to provisions in the Lithia Dealer Agreement whereby Mazda "agree[d] to '(e) keep DEALER promptly and fully advised with respect to customer matters involving DEALER, and timely respond to notices from DEALER in situations involving claims of defects in MAZDA Products, and (f) provide suitable information to permit DEALER to respond to customers, consumer organizations and government agencies in a timely and courteous fashion in customer satisfaction matters involving DEALER.'" (See TAC ¶ 126 (quoting Lithia Dealer Agreement).) Even if those allegations were not stricken, however, the Court's resolution of the motion to dismiss would remain unchanged. As set forth herein, non-disclosure is not sufficient to establish fraudulent concealment.

[3] Plaintiffs' reliance on In re Takata Airbag Productions Liability Litigation, 193 F. Supp. 3d 1324 (S.D. Fla. June 15, 2016), is unavailing, as the issue of whether a manufacturer may be held liable for a dealer's statements was not raised by the defendant or otherwise addressed therein. See id. at 1344.

5

however, plead no more than non-disclosure, which, as discussed above, is not sufficient to plead "active and willful concealment." See Licul, 2013 WL 6328734, at *6.

The cases on which plaintiffs rely for the proposition that "illusory repairs" performed by dealers can be imputed to the manufacturer (see Opp. at 11:4) are distinguishable. In two of the cited cases, the alleged illusory repairs were made under warranty and, consequently, were paid for and authorized by the manufacturer, see Valencia v. Volkswagen Group of America Inc., 119 F. Supp. 3d 1130, 1134, 1137 (N.D. Cal. Aug. 11, 2015) (explaining repairs were made by manufacturer under warranty "in order to ensure that the defect [would] manifest itself outside of the warranty period"); Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1097 (N.D. Cal. July 3, 2007) (noting plaintiffs' argument that "'[w]here GM replaced the Truck's speedometers pursuant to warranty provisions, GM utilized equally defective'" parts), whereas, here, plaintiffs allege the subject repairs were not made under warranty (see TAC ¶¶ 91-92). In the third case on which plaintiffs rely, the court did not reach the issue "because neither [plaintiff] actually alleg[ed] that he received repairs during the statute of limitations period." See Majdipour v. Jaguar Land Rover North America, LLC, No. 12-CV-07849-WHW, 2015 WL 1270958 (D.N.J. Mar. 18, 2015)

Accordingly, plaintiffs again having failed to allege a basis on which Gunther Mazda's conduct can be imputed to Mazda, the Fifth Cause of Action will be dismissed without further leave to amend.

### b. Tenth Cause of Action (Schaaf's Claim under North Carolina Unfair & Deceptive Trade Practices Act)

In the Tenth Cause of Action, plaintiffs, on behalf of Schaaf and those similarly situated, allege Mazda violated North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA"), by "willfully fail[ing] to disclose and actively conceal[ing] the [d]efect." (See TAC ¶ 282.)

Mazda argues the Tenth Cause of Action is subject to dismissal for failure to allege sufficient aggravating circumstances to convert a breach of warranty claim into a

6

NCUDTPA claim. Under North Carolina law, as set forth in the Court's prior order, a "breach of warranty, standing alone, does not constitute a violation of" the NCUDTPA (see August 1 Order, at 7:14-15 (citing Walker v. Fleetwood Homes of N. Carolina, Inc., 362 N.C. 63, 72 (2007)), nor does "a mere breach of contract, even if intentional" (see id. at 7:16-17 (citing Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 62 (1992)); rather, "some type of egregious or aggravating circumstances must be alleged and proved before [the NCUDTPA's] provisions may take effect" (see id. at 7:17-19 (citing Dalton v. Camp, 353 N.C. 647, 657 (2001)), e.g., "deception either in the formation of the contract or in the circumstances of the breach" (see id. at 7:20-22 (citing Bartolomeo v. S&B Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 62 (1992)).

In its prior order, the Court dismissed the Tenth Cause of Action, finding plaintiffs failed to allege facts to show conduct on the part of Mazda sufficient to constitute aggravating circumstances, or, alternatively, to show any conduct on the part of Sport Durst Mazda could be imputed to Mazda. Plaintiffs now contend they have alleged sufficient aggravating circumstances, namely that "Mazda's refusal to disclose the latent [d]efect" amounted to deception in the formation of Schaaf's vehicle sales contract. (See Opp. at 7:18-19.)

Under North Carolina law, to establish actionable deception based on a failure to disclose a fact, the plaintiff must show the defendant had a duty to disclose that fact. See Bear Hollow, L.L.C. v. Moberk, L.L.C., No. 05-CV-210, 2006 WL 1642126, at *6 (W.D.N.C. June 5, 2016 (citing North Carolina law)). Such a duty, however, only arises under a limited number of circumstances, one of which, plaintiffs contend, is applicable here, specifically, where "the parties are negotiating at arm's length" and "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." See id.

In support thereof, plaintiffs again allege that Schaaf, "[p]rior to purchasing his vehicle, . . . test drove the vehicle, viewed advertisements for the vehicle and the

7

vehicle's window sticker, and spoke with Mazda sales representatives concerning the vehicle's features," and that none of those interactions "disclosed or revealed" the defect. (See TAC ¶ 99.) In addition, plaintiffs now allege that Mazda "developed the marketing material referenced [in the TAC]" and "design[ed], determin[ed] the substance of, and affix[ed]" the window stickers to its vehicles. (See TAC ¶¶ 113, 114). As before, however, plaintiffs fail to allege any facts demonstrating that Mazda, as opposed to only Sport Durst Mazda, was a party to the negotiations leading to Schaaf's purchase of the subject vehicle.

Plaintiffs' reliance on Johnson v. Ford Motor Company, No. 13-CV-6529, 2015 WL 7571841 (S.D. W.Va. Nov. 24, 2015), the sole case plaintiffs cite as applying North Carolina law and holding a vehicle manufacturer liable for a failure to disclose, is unavailing. In Johnson, in contrast to the instant case, the manufacturer did not simply fail to disclose a known defect, but, rather, was alleged to have directly made affirmative misrepresentations. See 2015 WL 7571841, at *13 (noting allegation that manufacturer itself "blamed [the defect] on driver error or other circumstances").

Further, to the extent plaintiffs may be contending Mazda's advertisements or stickers constituted misrepresentations, plaintiffs fail to allege the content of any such materials; rather, as discussed above, plaintiffs only allege the absence of content, i.e., a failure to disclose.

Accordingly, the Tenth Cause of Action will be dismissed without further leave to amend.

### c. Twelfth Cause of Action (Weeter and Schaaf's Breach of Implied Warranty Claims)

In the Twelfth Cause of Action, plaintiffs, on behalf of Weeter, Schaaf, and those similarly situated, allege Mazda provided to plaintiffs an "implied warranty that [their vehicles] and any parts thereof are merchantable and fit for the ordinary purposes for which they are sold," which implied warranty, plaintiffs allege, was breached because the vehicles "suffered from the [d]efect at the time of sale that causes the vehicles' clutch to

fail prematurely." (See TAC ¶ 296.)

By its prior order, the Court dismissed plaintiffs' Twelfth Cause of Action, "with leave to amend to allege facts sufficient to establish privity." (See August 1 Order, at 11:9, 12:4.) In the TAC, plaintiffs allege no new facts bearing on privity and indeed "concede they cannot meet the pleading requirements set forth by the Court." (See Opp. at 2 n.1.)

Additionally, to the extent the Court also dismissed the Twelfth Cause of Action on the further ground that Schaaf's claim, in the absence of allegations to support tolling, is barred by the applicable four-year statute of limitations, plaintiffs, although given leave to plead tolling, have failed to allege any new facts to make such showing.

Accordingly, the Twelfth Cause of Action will be dismissed without further leave to amend.

## CONCLUSION

For the reasons stated:

(1) Mazda's motion to strike is hereby GRANTED, and

(2) Mazda's motion to dismiss is hereby GRANTED and the Fifth, Tenth, and Twelfth Causes of Action are DISMISSED without further leave to amend.

Lastly, the Case Management Conference is rescheduled for January 5, 2018. A Joint Case Management Statement shall be filed no later than December 29, 2017.

**IT IS SO ORDERED.**

Dated: December 18, 2017

MAXINE M. CHESNEY
United States District Judge

9